UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SESCILY RENEE CONEY,

Plaintiff,

- against -

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, *et al.*,

Defendants.

25-CV-5011 (VSB) (BCM)

**OPINION & ORDER**

Appearances:

Sescily Renee Coney
New York, New York
*Pro Se Plaintiff*

Susan D. Friedfel
Tamara Valcin
Jackson Lewis P.C
White Plains, New York
*Counsel for Defendants The Trustees of Columbia University in the City of New York, Columbia University School of Nursing, Dr. Lorraine Frazier, Dr. Candice Smith, Dr. Heidi Hahn-Schroeder, Dr. Mary Hickey, Dr. Ellen Fahey, Amanda Kostreva, Audrey Brown, David Seltzer, Deirdre Ingram, Dr. Jeanne Churchill, Madeline Green, Claire Shipman, Dr. Angela Olinta, Dr. Judy Wolfe, Colleen Lewis, Arthur Martin, Claudia Marin Andrade, and Jessica Nunez*

Amy Joy Traub
Daryl Gregory Leon
Matthew Caleb Berger
Baker & Hostetler, LLP
New York, NY
*Counsel for Defendants New York-Presbyterian Hospital and Shulamit Just-Michael*

Russell E. Adler
Law Offices of Russell E. Adler PLLC
Katonah, NY
*Counsel for Defendant Emily Fisher*

VERNON S. BRODERICK, United States District Judge:

On June 13, 2025, pro se Plaintiff Sescily Renee Coney ("Coney" or "Plaintiff") filed her complaint alleging various federal and state law claims including, among other things, breach of contract, defamation, bullying, hazing, extortion, and retaliation, as well as violations of, among other statutes, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, ("Title VI"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-102 *et seq.*, ("NYCHRL"); the Americans with Disabilities Act, 42 U.S.C. § 12112(a) *et seq.*, ("ADA"); and Section 504 of the Rehabilitation Act of 1973. (Doc. 1.) Shortly thereafter, on June 23, 2025, Plaintiff filed an Amended Complaint. (Doc. 11.) In her Amended Complaint, Plaintiff names the following Defendants: The Trustees of Columbia University in the City of New York ("Columbia University" or the "University"), Columbia University School of Nursing ("CUSON"), Dr. Lorraine Frazier ("Frazier"), Dr. Candice Smith ("Smith"), Dr. Heidi Hahn-Schroeder, Dr. Mary Hickey ("Hickey"), Dr. Ellen Fahey, Amanda Kostreva ("Kostreva"), Audrey Brown, David Seltzer, Deirdre Ingram ("Ingram"), Dr. Jeanne Churchill ("Churchill"), Madeline Green, Claire Shipman, Dr. Angela Olinta, Dr. Judy Wolfe, Colleen Lewis, Arthur Martin, Claudia Marin Andrade, Jessica Nunez ("Nunez") (collectively, the "Columbia Defendants"), New York-Presbyterian Hospital ("NYPH"), Shulamit Just-Michael ("Just-Michael") (collectively, the "NYPH Defendants"), and Emily Fisher ("Fisher"). She asserts twenty-seven federal and state claims arising from a series of incidents that took place when Coney was a nursing student at the Columbia University School of Nursing between 2024 and 2025. (*See generally* Doc. 11.)

Before me are the following motions: the NYPH Defendants' motion to dismiss the Amended Complaint, (Doc. 112); the Columbia Defendants' motion to dismiss certain claims in the Amended Complaint, (Doc. 114); Plaintiff's motion for a default judgment against Fisher,

(Docs. 121, 123); Defendant Fisher's cross-motion to vacate the entry of default and motion to dismiss, (Doc. 130); and Plaintiff's request for a temporary restraining order and preliminary injunction against Columbia University, (*see* Docs. 1, 2, 11, 146). Additionally, before me are Magistrate Judge Barbara C. Moses' Report & Recommendation on Plaintiff's motion for default judgment and Defendant Fisher's cross-motion to vacate the entry of default and dismiss the claims against her, (Doc. 157 ("Report" or "R&R")), along with Plaintiff's objections to the Report, (Doc. 158 ("Objections" or "Objs.")). This Opinion & Order addresses each of these motions, Magistrate Judge Moses' Report, and Plaintiff's objections to that Report.

For the reasons articulated below, the NYPH Defendants' motion to dismiss is GRANTED, with some federal and state claims dismissed without prejudice and with leave to amend; the Columbia Defendants' partial motion to dismiss is GRANTED, with some federal and state claims dismissed without prejudice and with leave to amend; and Magistrate Judge Moses' Report & Recommendation is ADOPTED in full—Plaintiff's motion for a default judgment against Fisher is DENIED and Fisher's cross-motion to vacate entry of default and motion to dismiss pursuant to Rule 12(b)(5) is GRANTED, with Plaintiff's claims against her dismissed without prejudice and with leave to amend. Plaintiff's motion for a temporary restraining order and preliminary injunction is also DENIED.

## I. **Factual Background**[1]

Pro se[2] Plaintiff "is a Black, female, and disabled student at Columbia University." (Doc. 11 ("Amended Complaint" or "Am. Compl.") ¶ 6.) Specifically, Coney was enrolled in the Masters of Direct Entry ("MDE") program (the "MDE Program" or "Program") at CUSON. (*Id.*) The MDE Program is a "15-month accelerated pre-licensure pathway designed for students entering the nursing profession with a prior non-nursing bachelor's degree." (*Id.* ¶ 126.) Coney has been a student in the MDE Program since June 2024 and was in "her final semester," scheduled to complete the Program in August 2025 and receive a diploma in October 2025. (*Id.* ¶ 6.) In fact, Plaintiff participated in CUSON's commencement proceeding on May 20, 2025. (*Id.* ¶ 217.) However, she was administratively withdrawn from the program on June 17, 2025 due to a financial dispute with the University. (*Id.* ¶¶ 223–25.) Plaintiff states that Columbia University has an "entrenched culture of discrimination and retaliation," (*id.* ¶ 61), which is highlighted through a series of incidents during her time in the MDE program.

---

[1] The following facts are drawn from the 72-page Amended Complaint, (Doc. 11). which I assume to be true for purposes of Defendants' motions to dismiss. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

Moreover, in ruling on a 12(b)(6) motion to dismiss, a court may consider additional documents beyond the complaint, including any statements or documents incorporated by reference, as well as "matters of which judicial notice may be taken, and documents either in [the plaintiff's] possession or of which [the plaintiff] had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal quotation marks omitted and alterations adopted). Because the documents attached as exhibits to the Declaration of Susan D. Freidfel, (Docs. 115-1–115-5), which accompany the Columbia Defendants' motion to dismiss, are documents of "which plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted), and are referenced in her Amended Complaint, I may also consider these documents when ruling on Defendants' 12(b)(6) motions to dismiss.

[2] The Columbia Defendants claim that Plaintiff is a "licensed attorney under the New Jersey Bar," so "the liberal-construction rule [typically applicable to pro se litigants] does not apply to her pleadings." (Doc. 116 at 9.) I do not address whether Plaintiff is a licensed attorney or whether licensed attorneys proceeding pro se are not entitled to have their pleadings construed with the requisite special solicitude afforded to pro se litigants. In any event, for purposes of these motions, I afford Plaintiff's pleadings "special solicitude" and interpret them to "raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted), because even under this liberal standard, I find dismissal is warranted.

### A. *Plaintiff's Obstetrics Rotation*

From October 2024 to November 2024, as part of her enrollment in the Nursing with Childbearing Families course, Plaintiff took part in an obstetrics ("OB") rotation at an NYPH facility, the Alexandra Cohen Hospital for Women and Children ("Hospital"). (*Id.* ¶ 162.) During this rotation, Defendant Madeline Green was Plaintiff's clinical instructor onsite at the Hospital, and Defendant Smith, Director of Clinical Placement at CUSON, was the clinical course coordinator. (*Id.* ¶¶ 15, 28, 162.) On October 31, 2024, after she arrived late to her rotation for the first time, Plaintiff was assigned to the Neonatal Intensive Care Unit ("NICU") at the Hospital for the day. (*Id.* ¶¶ 163–64.) That day, while on the NICU floor, Plaintiff and Defendant Fisher, a White classmate, attempted to place a Halloween costume on an infant patient, at the request of the baby's parents, but determined that they could not do so, because the patient "was connected to a respirator, a cardiac monitor, and a feeding syringe." (*Id.* ¶¶ 165, 168–72.) Hospital nurses then changed the baby into the costume, noting that Plaintiff and Fisher "did a good job." (*Id.* ¶ 173.)

Later that day, Plaintiff and Fisher were with a nurse in another infant patient's room. (*Id.* ¶ 175.) The nurse asked Plaintiff if she would like to hold the baby. (*Id.*) She placed the baby in Plaintiff's arms and left the room. (*Id.*) At no point during this time was Plaintiff alone. (*Id.*) After the nurse left the room, Plaintiff heard "a loud bang . . . at the entrance of the patient room" and saw that Defendant Just-Michael, a White charge nurse and employee of NYPH, had entered the room "abruptly and without warning, startling Plaintiff and creating a heightened atmosphere of fear and tension." (*Id.* ¶ 177.) Just-Michael "exclaimed that Plaintiff and Fisher should not be in the room" and chastised them for being there without a nurse present and without permission. (*Id.* ¶¶ 178–79 (internal quotation marks omitted).) Although the nurse who

had previously left Plaintiff and Fisher in the room with the baby "confirmed that their presence was authorized and appropriate under supervision," Just-Michael's "tone and behavior remained accusatory," (*id.* ¶ 180), and—according to Plaintiff—her "aggressive and disproportionate response" was "aimed primarily at Plaintiff, a Black female student" rather than at Fisher, the White student, who was "treated with less scrutiny," (*id.* ¶ 182). Although Plaintiff tried to "de-escalate" the situation, Just-Michael "continued to berate and scold Plaintiff and Fisher in a public and aggressive manner." (*Id.* ¶ 180.) Shortly thereafter, Just-Michael left the room, and Plaintiff and Fisher then left and joined a post-conference session with CUSON staff and other students. (*Id.* ¶ 181.) During this session, Plaintiff did not bring up her interaction with Just-Michael "out of concern for retaliation," and she returned to the NYPH Hospital "without incident." (*Id.* ¶¶ 181, 190.) However, Plaintiff NYPH was later "made aware" of the alleged discriminatory conduct by Just-Michael "through [her] subsequent reports." (*Id.* ¶ 183.) However, NYPH failed to investigate the incident or "provide a restorative response." (*Id.*) "No meaningful action was taken to discipline Just-Michael or address the racialized nature of her outburst." (*Id.*)

Later that afternoon on October 31, 2024, Plaintiff attended a meeting with Smith during which Smith "expressed concerns" because Plaintiff had uploaded two assignments late and was unsympathetic to Plaintiff's explanation that she "was experiencing technical issues." (*Id.* ¶¶ 184–85.) They also discussed the incident with Just-Michael and Smith stated that "she would look into the situation." (*Id.* ¶ 186.) The following day, on November 1, 2024, Smith sent Plaintiff an email falsely accusing her of "disconnecting a feeding tube and moving a baby's oxygen to apply a Halloween costume," advising Plaintiff that she would earn "a failing grade." (*Id.* ¶ 187.) Smith and Defendant Dr. Heidi Hahn-Schroeder, the Assistant Dean of Academic

Affairs and Program Director of the MDE Program, then placed Plaintiff on an "action plan." (*Id.* ¶¶ 16, 187.) Subsequently, Plaintiff contacted Fisher who "confirmed that Plaintiff was not alone with any patient," "admitted" that Plaintiff "did not move any heart monitor, respirator, or feeding tube," further "admitted" that Just-Michael was "aggressive when speaking with her and Plaintiff," and stated she would be "willing to assist with this matter." (*Id.* ¶ 189.) Plaintiff states that she recorded the conversation with Fisher. (*Id.*)

Smith asked to meet with Plaintiff on November 11, 2024, but Plaintiff was ill. (*Id.* ¶ 192.) On November 12, 2024, "in retaliation for Plaintiff being ill," Smith gave her "an F for OB," claiming that it was "because of safety issues and lateness," and barred her from "attending clinical for a new course," known as "Peds." (*Id.* ¶ 193.) Fisher was not barred from attending clinical for this new course. (*Id.* ¶ 195.) On November 13, 2024, Plaintiff initiated the grievance process to challenge her grade. (*Id.* ¶ 196.) That same day, she asked Fisher to "write a statement for Plaintiff's grievance," but Fisher demurred, stating that she would meet with Smith but was "'uncomfortable' doing anything more at the moment." (*Id.* ¶ 197.) Instead, Plaintiff submitted Fisher's "recorded confession" to the grievance panel. (*Id.* ¶ 205.) On November 14, 2024, the Committee on Admissions withdrew Plaintiff from the MDE program because of her failing grade in the OB clinical. (*Id.* ¶ 198; Doc. 115-2.)

On December 6, 2024, after a grievance hearing, Defendant Hickey, Vice Dean of Education at CUSON, informed Plaintiff she could remain in the MDE Program, but would retain the failing grade, would be required to "complete the OB clinical again," and would be barred from "the Peds lecture and clinical." (Am. Compl. ¶¶ 17, 201.) "Plaintiff was baffled because Fisher, the White student, was allowed to continue her education without interruption" and "was not banned or barred from Peds clinical or lecture." (*Id.* ¶ 201.) "Fisher's silence was

not passive; it was complicit." (*Id.* ¶ 216.)

On or about December 11, 2024, Plaintiff submitted an appeal of the grievance panel's decision. (*Id.* ¶ 202.) On January 6, 2025, Plaintiff received an email from Defendant Frazier, Dean of CUSON, stating that she overruled the grievance panel and awarded Plaintiff a Low Pass in the course instead of an F. (*Id.* ¶¶ 13, 207.) However, there "was no mention of the discrimination that was raised by Plaintiff and there were no actions taken to address the concerns." (*Id.* ¶ 207.) On January 20, 2025, Plaintiff met with Hickey to discuss program options and program completion timelines. (*Id.* ¶ 208.) Plaintiff chose to take extra classes so she could complete her program by August 2025, the normal completion time. (*Id.*) Later, in March of 2025, Smith approached Plaintiff in a manner that "was both unprofessional and unsettling" when she leaned over to see what Plaintiff was doing during her Pediatrics clinic rotation. (*Id.* ¶ 212.) This encounter was "provocative and invasive," particularly given Smith's previous "false and inflammatory allegations" against Plaintiff. (*Id.* ¶ 213.) Two months later, on May 28, 2025, Plaintiff was notified that the Committee on Admissions at CUSON had retroactively placed Plaintiff on academic probation for the summer of 2025 because she earned a Low Pass in the OB clinical course, initiating her removal from the Doctor of Nursing Practice in Midwifery program. (*Id.* ¶¶ 219–20.)

### B. *Plaintiff's Disability Accommodations Requests*

Because of the "incidents and actions alleged," Plaintiff's disabilities were further exacerbated.[3] (*Id.* ¶¶ 78–79.) On March 15, 2025, Plaintiff began the process of seeking academic accommodations for her disabilities by contacting the University's Office of Disability Services ("ODS"). (*Id.* ¶ 80.) On March 28, 2025, Plaintiff was notified that she had been

[3] Plaintiff does not include any specific information on what her disabilities are in her Amended Complaint.

temporarily approved for the following accommodations for her upcoming examinations: "1.5x extended testing time" and a reduced capacity testing environment. (*Id.* ¶ 82; Doc. 115-3.) On March 31, 2025, Plaintiff completed her final exam for the Science of Nursing with Children ("Pediatrics" or "Peds") course in the designated accommodations room. (Am. Compl. ¶ 83.) Before her examination began, she received text messages from classmates who "were not in the accommodations room." (*Id.* ¶ 85.) Additionally, Plaintiff was wearing a smartwatch, which contained "a medically necessary heart monitor, which monitors for accelerated and decelerated heart rates, a physiological characteristic of her disabilities." (*Id.* ¶¶ 83, 91.) This "physiological characteristic" was mentioned when Plaintiff requested accommodations; she also "requested the ability to speak aloud while taking the exam." (*Id.* ¶¶ 83–84.) During the exam, Plaintiff was reading aloud, "per the accommodations she requested" and with permission, and the proctor also asked Plaintiff to remove her heart monitor but did not stop the exam. (*Id.* ¶¶ 90–92.)

On April 9, 2025, Plaintiff was notified that the Pediatrics final exam grades had been posted, but her grade was not included. (*Id.* ¶ 94.) After Plaintiff reached out about her grade to Defendant Churchill, a CUSON professor, she was notified the next day that her grade was being withheld until the conclusion of an investigation by Columbia's Center for Student Success and Intervention ("CSSI") based on allegations that Plaintiff was using the smartwatch to receive answers. (*Id.* ¶¶ 27, 95–96.) "Churchill, in direct violation of Columbia's Code of Ethics and her professional obligations as a faculty member, failed to initiate any conversation with Plaintiff to investigate or resolve the situation before escalating matters through formal disciplinary channels." (*Id.* ¶ 97.) Moreover, together with Churchill, Plaintiff alleges that Defendant Ingram, a Program Director at CUSON, crafted "a false and deeply ableist narrative about Plaintiff," characterizing her disability-related behavior—such as her need to sit near a wall for

sensory regulation—as "very usual"[4] and "suspicious," despite medical documentation of her disability. (*Id.* ¶¶ 24, 100 (internal quotation marks omitted).) "Ingram chose to racialize and criminalize Plaintiff's physical presence, presenting normal and reasonable disability-related behaviors as if they were evidence of deceit or misconduct." (*Id.* ¶ 100.)

On April 11, 2025, during her orientation with Defendant Kostreva, the Assistant Director of Disability Services, Plaintiff discussed her need for additional accommodations. (*Id.* ¶¶ 20, 104.) However, Kostreva denied most of Plaintiff's accommodation requests, noting that she could not wear a heart monitor and that Plaintiff did not need to speak aloud "because those are accommodations reserved only for students with dyslexia." (*Id.*) On April 25, 2025, while the CSSI investigation was still pending, Churchill released Plaintiff's final exam grade in the Pediatrics course. (*Id.* ¶ 106.) However, Vice Dean Hickey denied Plaintiff's request to participate in the next course, Integration, citing the ongoing CSSI inquiry into her conduct during the Pediatrics final. (*Id.* ¶ 107.) On May 7, 2025, Plaintiff participated in a CSSI hearing, where she presented evidence that the watch was only being used to monitor her heart rate during the exam, in connection with her "disability-related health concerns." (*Id.* ¶ 109.) Plaintiff also cited two nondisabled students who were found to be in possession of unauthorized electronic devices during an exam but were not facing disciplinary action. (*Id.*) During the hearing, Plaintiff discussed her case with Defendant Nunez, Executive Director of CSSI. (*Id.* ¶ 110.) Moreover, Plaintiff continued to face issues getting her requested disability accommodations approved, because ODS would not accept her medical documentation. (*Id.* ¶ 112–13.) On May 21, 2025, CSSI notified Plaintiff that she was found to be in violation of the test conditions

---

[4] Based on the context in which this phrase is being used, this appears to be a typographical error, and the phrase should have been "very unusual."

policy, stating that because Plaintiff had not sought an accommodation request to wear a smartwatch, she was not permitted to have this device during her exam and wearing it "gave [her] access to an unfair advantage in violation of the policy." (*Id.* ¶ 114; Doc. 115-4 at 2 (internal quotation marks omitted).) Moreover, "[t]he hearing officers also concluded that . . . audibly speaking aloud, even if unintentionally, is a violation as it compromises the exam environment and can disadvantage other students by distracting them." (Doc. 115-4 at 2.) However, Plaintiff was notified that the evidence did not support a determination of "Cheating or Disruptive Behavior." (*Id.*) On May 28, 2025, Plaintiff appealed the decision. (Am. Compl ¶ 114.) Plaintiff also retook the Pediatrics exam on May 30, 2025 and received her final exam grade on June 5, 2025. (*Id.* ¶¶ 119–20.) On June 17, 2025, Defendant Frazier issued a decision on the appeal, upholding the finding. (*Id.* ¶ 124.)

### C. ***Plaintiff's Financial Aid and Enrollment Issues***[5]

Plaintiff also outlines a series of allegations that led to her administrative withdrawal from CUSON in the summer of 2025. (*Id.* ¶ 223.) To pay for school, Plaintiff received a federal student loan in June 2024. (*Id.* ¶ 128.) That loan was disbursed in September 2024, and Plaintiff received a refund from the University. (*Id.* ¶ 129.) Also in September 2024, Coney became a recipient of the Health Resources and Services Administration's Nurse Corp Scholarship (the "HRSA Scholarship"), which is funded by Congress. (*Id.* ¶ 127.) If a HRSA Scholarship recipient had already taken out a loan to pay tuition and related fees, HRSA had a multi-step

[5] Some of the facts in this section rely on Plaintiff's request to expedite the preliminary injunction motion, (Doc. 146), which allege additional facts and changed circumstances, the Hickey Declaration, (Doc. 37 ("Hickey Decl."), and the Friedfel Declaration, (Doc. 40 ("Friedfel Decl.")), which were filed by Defendants Columbia University and CUSON in opposition to Plaintiff's preliminary injunction and temporary restraining order request. While I do not use these facts to adjudicate the motions to dismiss, I am permitted to rely on affidavits, depositions, and sworn testimony—even hearsay—in adjudicating Plaintiff's preliminary injunction motion. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). To the extent this letter and these declarations are cited, I only rely on them in connection with rendering a decision on the preliminary injunction motion and not the other motions before me.

process for disbursement: (1) the school would send an itemized invoice to HRSA, (2) HRSA pays the school, and then (3) the school reimburses the HRSA Scholarship recipient. (*Id.* ¶ 131.) That process occurred here, and Plaintiff received a reimbursement fund in December 2024. (*Id.* ¶¶ 132–35.)

On January 17, 2025, Coney's student account was placed on a financial hold. (*Id.* ¶ 143.) On January 23, 2025, the University informed Plaintiff that the financial hold was implemented because she was required to return the reimbursed funds she had received in December 2024 due to a miscalculation in the University's "internal processing errors." (*Id.* ¶ 144.) The University claimed to have previously returned Coney's federal student loan funds, and therefore Plaintiff would have to return the reimbursed money she had received. (*Id.* ¶ 145.) Plaintiff met with some University administrators on an undisclosed date, but the issue was not resolved. (*Id.* ¶ 147.)

On April 7, 2025, Plaintiff emailed the University requesting that the federal student loans that the University had returned be obtained again and disbursed to her student account. (Doc. 40-6 at 3.) Coney emphasized that this was in accord with HRSA guidelines. (*Id.*) On April 10, 2025, the Dean of Students replied, "HRSA does not determine federal student loan eligibility," and "that can only be determined by the lender, US Department of Education." (*Id.* at 2.) On May 8, 2025, Plaintiff met with other administrators who explained that she was "overawarded." (Am. Compl. ¶ 157.)

On May 21, 2025, Plaintiff's student account showed no financial hold and that she was able to successfully register for her courses. (*Id.* ¶ 158.) However, a registration hold on Plaintiff's account was reinstated and Plaintiff was unregistered from her courses. (*Id.* ¶ 159; *see also* Doc. 40-7 at 7 (Plaintiff's email stating she "was just informed that a hold was placed back

on my account and that [her] classes were all dropped yesterday").) On June 5, 2025, the University told Plaintiff that: "As previously discussed, Summer 2025 registration will not be permitted until payment arrangements are made to satisfy your outstanding balance." (Doc. 40-7 at 6.)

On June 6, 2025, the University informed Plaintiff that she would only be allowed to register if she either "(1) paid $10,000 immediately and entered into a monthly payment plan, or (2) paid over $28,000 in full." (Am. Compl. ¶ 160.) The University notified Plaintiff that she would be unable to enroll in the Summer 2025 semester until the financial issues were resolved. (Hickey Decl. ¶ 21.) Plaintiff had until June 16, 2025 to either "resolve the financial hold or submit a completed leave of absence form." (*Id.*; Am. Compl. ¶ 221.) Plaintiff did not resolve the financial hold or submit a completed leave of absence form. (Hickey Decl. ¶ 21.) On June 17, 2025, Coney was administratively withdrawn from the MDE Program "due to a failure to register for the Summer 2025 term." (*Id.* ¶ 22; Am. Compl. ¶ 223.) Furthermore, HRSA informed Plaintiff that a failure to be enrolled by January 2026 at the University would result in a permanent termination of her federal scholarship. (Doc. 146 at 1.) Once terminated, the scholarship cannot be reinstated. (*Id.*) Since her withdrawal, Plaintiff has experienced "new and escalating harassment" from other University students on Reddit, where they have identified Plaintiff by her name and posted that she was "expelled from Columbia for pulling NICU wires for an Instagram photo." (*Id.* ¶ 3.)

## II. <u>Procedural Background</u>

On June 13, 2025, pro se Plaintiff filed her complaint. (Doc. 1.)[6] On June 23, 2025, Plaintiff filed the Amended Complaint, which remains her operative pleading. (Am. Compl.)

[6] That same day, she consented to receiving electronic service by ECF. (Doc. 3.)

Plaintiff asserts 27 claims under various federal and state laws: (1) Title VI of the Civil Rights Act of 1964; (2) N.Y. Exec. Law § 296; (3) N.Y. Civil Rights Law § 40-c; (4) NYCHRL—N.Y.C. Admin. Code § 8-107(4), (17); (5) Breach of Contract; (6) N.Y. General Business Law §§ 349, 350; (7) 42 U.S.C. § 1986; (8) ADA; (9) Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"); (10) Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; (11) Title IV; (12) Nurse Corps Scholarship Program Statute—42 U.S.C. § 297n; (13) "Violation of Procedural and Substantive Due Process Rights" under the New York Constitution and the Fourteenth Amendment; (14) "Defamation of Character," N.Y. Civil Rights Law § 76–79; (15) "Bullying," N.Y. Educ. Law Art. 2 (§§ 10–18); (16) "Hazing"; (17) Criminal "Extortion (Coercive Threats Tied to Educational Status)" under N.Y.P.L. §§ 155.05– 155.08; (18) Criminal Extortion (Withholding of Aid and Access) under N.Y.P.L. §§ 155.05– 155.08; (19) "Retaliation in Violation of 42 USCS § 12203"; (20) Title IX; (21) Mail Fraud—18 U.S.C. § 1341; (22) Wire Fraud—18 U.S.C. § 1343; (23) "Financial Aid Fraud and Misuse of Title IV Funds—20 U.S.C. § 1097"; (24) "Falsification and Manipulation of Federally Regulated Education Records" pursuant to "18 U.S.C. §§ 1001, 1519"; (25) Obstruction of Justice and Retaliation Against a Whistleblower—18 U.S.C. §§ 1513(e), 1512(b), and 1519; (26) Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (27) 26 U.S.C. § 7206. (*Id.* ¶¶ 226–483.)

### A. *Temporary Restraining Order and Preliminary Injunction Motion*

Plaintiff's June 13, 2025 complaint requested, among other things, an emergency, ex parte temporary restraining order and a preliminary injunction order directed at Columbia University. (Doc. 1 at 51.) Although Plaintiff did not formally file a motion for a temporary restraining order or preliminary injunction, I construed Plaintiff's complaint liberally to make such a request. Indeed, Plaintiff also filed a 29-page memorandum of law and over 100 pages of

exhibits in support of her emergency, ex parte request for a temporary restraining order.[7] (Doc. 2 ("PI Mem.").) On June 20, 2025, I issued an order denying Plaintiff's ex parte request, "reserv[ing] judgment on Plaintiff's motion for a temporary restraining order and preliminary injunction until I have heard from the parties," and ordering a briefing schedule. (Doc. 8.) Moreover, although Plaintiff did not file a motion for a temporary restraining order or preliminary injunction based on the Amended Complaint, I liberally construe her pleadings to request as much. In other words, Plaintiff did not file a separate motion for such relief; rather she merely requests this relief in the Amended Complaint.

On July 10, 2025, Defendants Columbia University and CUSON filed an opposition brief to the preliminary injunction motion, (Doc. 39), and two accompanying declarations, (Docs. 37, 40). On July 14, 2025, Plaintiff filed a reply brief. (Doc. 62.) The following day, Plaintiff filed a nearly identical reply brief, which I construe as an amended reply brief with additional exhibits. (Doc. 63.) On August 15, 2025, the University and CUSON filed a sur-reply opposing the preliminary injunction request. (Doc. 107.) On December 9, 2025, Plaintiff filed a letter motion to expedite alleging "changed" circumstances, which I construe as a supplemental brief to her preliminary injunction motion. (Doc. 146.) On December 19, 2025, Columbia Defendants filed their letter in response. (Doc. 150.)

**B. *Motions to Dismiss***

On September 8, 2025, the NYPH Defendants filed a motion to dismiss, (Doc. 112), and an accompanying memorandum of law, (Doc. 113). That same day, the Columbia Defendants also filed their motion to dismiss the amended complaint, (Doc. 114), an accompanying

[7] Plaintiff's filing is not in compliance with Local Civil Rule 7.1, which provides for certain formatting requirements and word or page-limits. Nor did she seek leave to file a memorandum with additional pages or words. For any submissions in the future, Plaintiff is instructed to comply with Local Civil Rule 7.1, the Local Civil Rules more generally, and the Federal Rules of Civil Procedure.

declaration and exhibits, (Doc. 115), and a supporting memorandum of law, (Doc. 116). On October 1, 2025, Plaintiff filed her opposition to the NYPH Defendants' motion to dismiss, (Doc. 131), and her opposition to the Columbia Defendants' motion to dismiss, (Doc. 132). On October 17, 2025, both sets of Defendants filed their replies. (Docs. 142 (the NYPH Defendants' Reply brief), 143 (the Columbia Defendants' Reply brief).)

### C. *Motion for Default Judgment and Defendant Fisher's Cross-Motion to Vacate Default and Dismiss Claims under Rule 12(b)(5)*[8]

After filing her Amended Complaint, in June and July of 2025, Plaintiff attempted to serve Defendant Fisher with process both in New York and in California but was unsuccessful. (Docs. 22 (noting that Fisher was "not present" on campus when Plaintiff's process server attempted service on the CUSON campus in Washington Heights on June 27, 2025), 66 (noting that Fisher was in New York "attending school" when the process server again attempted service at an address in Santa Barbara on July 16, 2025).) During this period, Plaintiff moved twice to serve Fisher by email, but both motions were denied. (*See* Docs. 50, 68.) Thereafter, Plaintiff made two more unsuccessful attempts to serve Fisher on the CUSON campus. (Docs. 82, 83.)

On August 7, 2025, Plaintiff's mother made another service attempt, this time at the Office of the General Counsel ("OGC") of Columbia University, on the University's main campus in Morningside Heights, where she handed the summons, the Amended Complaint, and various other documents to Vidyawattie Singh, Columbia University's Assistant Director of Finance and Administration, enclosed in an envelope labeled "Emily Fisher, MDE Student, Columbia University School of Nursing, FERPA." (Doc. 138 at 14, 19–21.) While Plaintiff contends that Singh informed her that she was able to accept service on behalf of Fisher, (Doc.

[8] For purposes of this Opinion & Order, I assume familiarity with the underlying facts and analysis as set forth in Magistrate Judge Moses' Report and Recommendation. (*See generally* Report.) However, I provide a short summary of the procedural history of the relevant motions in this section.

84 at 1; Doc. 138 at 19–21), Plaintiff's so called "certified transcript" does not indicate that Singh explicitly accepted service on behalf of Fisher, (*see* Doc. 140 at 7–13).

On September 9, 2025, plaintiff requested a certificate of default against Fisher pursuant to Rule 55(a), attesting that service of the summons and complaint "was effected by delivering copies to Columbia University's Office of General Counsel, accepted by Vidyawattie Singh, who explicitly stated at the time of service that [she was] authorized to accept service on Ms. Fisher's behalf." (Doc. 118 at 1.) On September 10, 2025, the Clerk of Court entered the default. (Doc. 119.) Later that same day, Plaintiff moved for default judgment against Fisher. (Doc. 121.) On September 11, 2025, counsel for Fisher appeared, "for the limited purpose of challenging service of process and corresponding absence of personal jurisdiction." (Doc. 124 at 1.) On September 22, 2025, Fisher filed her cross-motion to vacate the default pursuant to Rule 55(c) and to dismiss the claims against her pursuant to Rule 12(b)(5) for insufficient service of process. (Doc. 130), alongside an accompanying memorandum of law, (Doc. 130-6), and supporting declarations, (Docs. 130-4, 130-5). On October 6, 2025, Plaintiff filed her opposition, (Doc. 138), and three days later, on October 9, 2025, Plaintiff filed a "notice of supplemental evidence," attaching a purported transcript of her mother's interaction with Singh, (Doc. 140). On October 10, 2025, Fisher filed her reply. (Doc. 141.) On August 7, 2026, I referred Plaintiff's default judgment motion and Fisher's cross-motion to vacate default and dismiss the claims for insufficient service of process to Magistrate Judge Moses for a report and recommendation. (Doc. 156.) That same day, Judge Moses issued her Report. (Report.) On August 21, 2026, Plaintiff filed her objections to the Report. (Objs.)

## III. <u>Legal Standard</u>

### A. *Rule 12(b)(6): Failure to State a Claim*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). "In keeping with these precepts, although Rule 12(b)(6) generally restricts a court's consideration to the four corners of the complaint, pro se pleadings may be read together

to determine whether a plaintiff conceivably could be entitled to relief." *Sathianathan v. Smith Barney, Inc.*, No. 04-CV-7122, 2006 WL 538152, at *13 (S.D.N.Y. Feb. 24, 2006) (collecting cases).

"Nonetheless, a litigant's pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 607 (S.D.N.Y. 2004) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), *aff'd*, 136 F. App'x 383 (2d Cir. 2005). Indeed, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted and alterations adopted).

### B. *Review of a Magistrate Judge's Report*

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)(C)).

Pursuant to the standard often articulated by the district courts of this Circuit, "[i]f a party . . . 'simply relitigates his original arguments, the Court reviews the Report and Recommendation only for clear error.'" *Antrobus v. N.Y.C. Dep't of Sanitation*, 2016 WL 5390120, at *1 (E.D.N.Y.

Sept. 26, 2016) (quoting *Barrat v. Joie*, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); *see also Pena v. Rivera*, No. 05-CV-3109, 2006 WL 2529771, at *1 (S.D.N.Y. Aug. 31, 2006). General and conclusory objections are also only reviewed for clear error. *See* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (summary order) ("[G]eneral objection[s] [are] insufficient to obtain *de novo* review by [a] district court."). Under a clear error standard of review, "[s]o long as there is a basis in the evidence for a challenged inference, [I] do not question whether a different inference was available or more likely." *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007). Notably, a reviewing court need "respond only to 'those portions of the . . . recommendations to which objection is made.'" *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578, 2021 WL 3721349, at *3 (S.D.N.Y. Aug. 20, 2021) (quoting *U.S. v. Male Juvenile* (95-CR-1074), 121 F.3d 34, 38 (2d Cir. 1997)).

### C. *Preliminary Injunction Motion*

To obtain a preliminary injunction, the movant "must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Id.* at 345–46 (quoting *Winter*, 555 U.S. at 24).

Of these factors, irreparable harm is the most important, for if there is no finding of irreparable harm, an injunction cannot issue. *See USA Recycling, Inc. v. Town of Babylon,* 66

F.3d 1272, 1294–95 (2d Cir. 1995) ("We have described a showing of irreparable harm as the *sine qua non* for preliminary injunctive relief." (citation omitted)). The irreparable harm requirement "must therefore be satisfied before the other requirements for an injunction can be considered." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (internal quotation marks omitted). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted).[9]

## IV. <u>Discussion</u>

Because Plaintiff asserts separate factual allegations for each set of defendants and there are multiple separate motions before me, I address each motion in turn.

### A. *NYPH Defendants' Motion to Dismiss*

#### 1. Federal Claims

Plaintiff asserts twenty-two of the twenty-seven federal and state claims in her Amended Complaint against the NYPH Defendants. The NYPH Defendants move to dismiss all of these

[9] A movant's burden is even higher when she "seeks a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (internal quotation marks omitted). "A mandatory preliminary injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id.* (internal quotation marks omitted).

Plaintiff initiated this action on June 13, 2025, which pre-dates her administrative withdrawal on June 17, 2025. Coney amended her complaint on June 23, 2025, which post-dates the administrative withdrawal. Generally, an amended complaint "replaces the original complaint." *Maddy v. Life Time, Inc.*, No. 22-CV-5007, 2023 WL 4364488, at *7 (S.D.N.Y. July 5, 2023). This would mean that Plaintiff's motion, requesting "[r]einstatement as a final semester student at CUSON," among other requests, (Am. Compl. 71), is a motion for a mandatory preliminary injunction because she was, at that time, already administratively withdrawn. Nonetheless, even liberally construing pro se Plaintiff's filings and reviewing the filings under the standard for a preliminary injunction rather than a mandatory preliminary injunction, a preliminary injunction is still an "extraordinary" remedy, and Plaintiff fails to show irreparable harm, as discussed *infra*.

claims with prejudice. (Doc. 113 at 18.) I first address Plaintiff's federal claims, which include the following counts: (1) Title VI ("Count 1"), (Am Compl. ¶¶ 226–42.); (2) 42 U.S.C. § 1986 ("Count 7"), (*id.* ¶¶ 306–19); (3) ADA ("Count 8"), (*id.* ¶¶ 320–36); (4) Rehabilitation Act ("Count 9"), (*id.* ¶¶ 337–50); (4) FERPA, 20 U.S.C. § 1232g ("Count 10"), (*id.* ¶¶ 351–59); (5) "Title IV— 34 C.F.R. § 685.202" ("Count 11"), (*id.* ¶¶ 360–67); (6) Nurse Corps Scholarship Program Statute—42 U.S.C. § 297n ("Count 12"), (*id.* ¶¶ 368–75); (7) "Violation of Procedural and Substantive Due Process Rights" under the Fourteenth Amendment ("Count 13"), (*id.* ¶ 377); (8) Criminal Extortion ("Count 17" and "Count 18"), (*id.* ¶¶ 397–403).[10]; (9) "Retaliation in Violation of 42 USC[] § 12203" ("Count 19"), (*id.* ¶¶ 404–12); (10) Title IX ("Count 20"), (*id.* ¶¶ 413–24); (11) "Obstruction of Justice and Retaliation Against a Whistleblower —18 U.S.C. §§ 1513(e), 1512(b), and 1519" ("Count 25"), (*id.* ¶¶ 460–67); and (12) Civil RICO ("Count 26"), (*id.* ¶¶ 468–76).[11]

a. <u>Title VI (Count 1)</u>

"Title VI prohibits intentional discrimination based on race in any program that receives federal funding." *DT v. Somers Cent. Sch. Dist.*, 348 F. App'x 697, 699 (2d Cir. 2009) (summary order); *see also Alexander v. Sandoval*, 532 U.S. 275, 281–83 (2001) (explaining that Title VI forbids intentional discrimination on the basis of race by recipients of federal funding); 42 U.S.C. § 2000d, *et seq*. To state a Title VI claim for discrimination, a Plaintiff must allege

---

[10] While Plaintiff's criminal extortion claims are technically brought under state criminal law pursuant to New York Penal Law rather than under federal law, I also address these claims alongside Plaintiff's federal criminal code claims, because they all share a common defect—namely that none of these criminal statutes confer a civil private cause of action—as detailed *infra*.

[11] Any claims that Plaintiff "did not address in [her] opposition brief" in response to the NYPH Defendants' motion to dismiss can be deemed abandoned, and I need not address them. *Guan N. v. N.Y.C. Dep't of Educ.*, No. 11-CV-4299, 2014 WL 1275487, at *10 (S.D.N.Y. Mar. 24, 2014). However, I still consider all these federal claims, even ones that Plaintiff did not address in her opposition brief, because I liberally construe her pro se pleadings. In any event, Plaintiff still has not pled a plausible claim under any of these counts, as I further articulate.

"(1) that the entity involved engaged in racial or national origin discrimination; (2) the entity involved is receiving federal financial aid; and (3) plaintiff was an entitled beneficiary of the program or activity receiving the aid." *Freckleton v. Mercy Coll. NY*, No. 22-CV-1985, 2023 WL 2648827, at *4 (S.D.N.Y. March 27, 2023) (quoting *Babiker v. Ross Univ. Sch. Of Med.*, No. 98-cv-1429, 2000 WL 666342, at *4 (S.D.N.Y. May 19, 2000), *aff'd*, 86 F. App'x 457 (2d Cir. 2004)). Title VI "prohibits only intentional discrimination" via Section 601. *Alexander*, 532 U.S. at 280. Thus, to establish the discrimination prong, a plaintiff must allege a plausible claim "that the defendant discriminated against plaintiff on the basis of race, that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." *Freckleton*, 2023 WL 2648827, at *4 (alterations adopted) (quoting *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 556 (E.D.N.Y. 2012)). Title VI claims are properly alleged only against an institution which has engaged either in intentional discriminatory conduct or been deliberately indifferent to "severe, pervasive, and objectively offensive" conduct. *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 347–48 (S.D.N.Y. 2014) (quoting *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012)).

As an initial matter, Plaintiff's Title VI claim must be dismissed against Just-Michael, because "a Title VI claim cannot be brought against an individual defendant." *Yourman v. Columbia New York Presbyterian Hosp.*, No. 24-CV-6286, 2025 WL 104536, at *2 (S.D.N.Y. Jan. 13, 2025) ("*Yourman I*"). This is because Title VI applies only to entities that receive federal funding. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. Feb. 14, 2007) ("Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funding."). Thus, I dismiss Plaintiff's Title VI claim again Just-

Michael with prejudice. *See Yourman v. Columbia New York Presbyterian Hosp.*, No. 24-CV-6286, 2026 WL 690502, at *6 (S.D.N.Y. Jan. 16, 2026) ("*Yourman II*") (dismissing with prejudice and denying leave to amend a Title VI claim against individual defendants because the "law is clear that individuals cannot be held liable under Title VI," so amendment would be futile), *report and recommendation adopted sub nom.*, 2026 WL 480642 (S.D.N.Y. Feb. 20, 2026).

Plaintiff also cannot sustain her Title VI claim against NYPH. Plaintiff cannot hold NYPH liable unless she "alleges a policy which enabled the harassment or alleges deliberate indifference to severe, pervasive, and objectively offensive conduct." *Id.* at *5. First, Plaintiff "cites no policy of NYPH [] which [she] says led to [her] [discrimination]." *Id*. Indeed, Plaintiff cites no policy at all from NYPH. While Plaintiff attempts to reference the "entrenched culture of discrimination" at Columbia, (Am. Compl. ¶ 61), she fails to similarly allege even the most conclusory statements against NYPH.

Nor has Plaintiff plausibly alleged NYPH's deliberate indifference to severe and pervasive discriminatory conduct. She references only one incident that occurred during her 2024 obstetrics rotation, where Just-Michael, an employee of NYPH, berated Plaintiff for being in an infant patient's room where she was not supposed to be, despite getting another nurse's permission. (*Id.* ¶¶ 175–83.) According to Plaintiff, "Just-Michael's conduct—bursting into a room without verifying facts, yelling baseless accusations, and implying criminal-level misconduct—was infused with racial bias and aligned with historical patterns of perceiving Black individuals as inherently dangerous or less competent in professional settings." (*Id.* ¶ 182.) In response to Plaintiff's reporting, NYPH "failed to investigate the matter thoroughly or provide a restorative response." (*Id.* ¶ 183.) However, even assuming that these conclusory

allegations could form the basis for a Title VI claim, which they do not, this one incident cannot show deliberate indifference to "severe and pervasive" discriminatory conduct. *See Yourman II*, 2026 WL 690502, at *5 (dismissing Title VI claim based on only "one occasion" of harassment). Plaintiff's allegations that Defendant Fisher, as a White Woman, was treated more favorably, are also not sufficient to establish a claim under Title VI: "Naked allegations that plaintiffs were treated differently from others outside of the protected class cannot demonstrate entitlement to Title VI relief." *Bailey v. N.Y.L. Sch.*, No. 16-CV-4283, 2017 WL 6611582, at *14 (S.D.N.Y. Dec. 27, 2017) (collecting cases), *aff'd*, No. 19-3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021). Accordingly, I GRANT the NYPH Defendants' motion to dismiss as to Plaintiff's Title VI claim and dismiss the claim without prejudice against NYPH, but with prejudice again Just-Michael.

b. <u>42 U.S.C. § 1986 (Count 7)</u>

Next, Plaintiff alleges an "anti-civil rights conspiracy" under 42 U.S.C. § 1986, because the NYPH Defendants allegedly coordinated and executed a common plan to discriminate, harass, intimidate, and retaliate against Plaintiff during her time in the MDE Program. (Am. Compl. ¶¶ 308–09.) She claims that Defendants conspired to violates her rights under 42 U.S.C. §§ 1981 and 1982, but does not separately plead causes of action under these civil rights statutes. (Am. Compl. ¶ 311.) Section 1986 provides a remedy against individuals who "kn[ew] of and ha[d] the ability to aid in preventing a § 1985 conspiracy . . . [and] decline[d] to take steps preventing that conspiracy." *Wahad v. F.B.I.*, 813 F. Supp. 224, 232 (S.D.N.Y. 1993). Claims under this section are only valid "if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994). To state a claim of conspiracy under Section 1985, a plaintiff must show that there exists: (1) "a conspiracy; (2) for the purpose

of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of her right or privilege as a citizen of the United States." *Rivera v. Unknown At N.Y.C. Police Dept.*, No. 23-CV-9530, 2024 WL 3414457, at *3 (S.D.N.Y. July 8, 2024), *appeal dismissed sub nom.*, 2025 WL 2389971 (2d Cir. Feb. 13, 2025). In other words, "plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights." *Sklodowska-Grezak v. Stein*, 236 F. Supp. 3d 805, 809 (S.D.N.Y. 2017) (internal quotation marks omitted).

Outside of Plaintiff's conclusory statements that Defendants conspired to discriminate against her, she alleges no specific facts showing a conspiracy or any overt act that NYPH undertook. As previously mentioned, Plaintiff only notes that Just-Michael unfairly berated her while she was on an obstetrics rotation because she was a Black student and NYPH failed to thoroughly investigate the incident during her obstetrics rotation after she reported this to the institution. (Am. Compl. ¶¶ 175–83.) In her opposition, Plaintiff alleges that "it is a reasonable inference that Just-Michael spoke to someone at CUSON, which is how the allegations were disseminated" and that Just-Michael "communicated false and defamatory allegations" about her interactions during the obstetrics rotation, "including statement based on hearsay regarding Plaintiff via email to Plaintiff's CUSON clinical instructor." (Doc. 131 at 6.) However, mere communications about an incident on rotation, without anything more, when Plaintiff is part of an educational rotational program cannot rise to the level of conspiracy or demonstrate discriminatory animus. In fact, Plaintiff provides no facts suggesting any agreement, meeting of the minds, or coordinated action. *Kalderon v. Finkelstein*, 495 Fed. App'x 103, 108 (2d Cir.

2012) (summary order) (plaintiff must plead "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (citation omitted); *see also Ochoa v. Bratton*, No. 16-CV-2852, 2017 WL 5900552, at *9 (S.D.N.Y. Nov. 28, 2017) (dismissing a Section 1985(3) claim on a motion to dismiss where there were no facts to suggest an agreement or meeting of the minds among the defendants).

"[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (internal quotation marks omitted). "[I]n this case, [Plaintiff] does not allege any facts to support her claim that [Defendants] acted out of racial or other class-based discriminatory animus." *Sklodowska-Grezak*, 236 F. Supp. 3d at 809. "Instead, she merely reiterates her vague allegation that [the NYPH and Columbia Defendants] targeted [her] because of [her race]." *Id.* Thus, I GRANT the NYPH Defendants' motion to dismiss the Section 1986 claim and dismiss the claim without prejudice.

c. Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 (Count 8 and Count 9)

The ADA's "first three titles proscribe discrimination against individuals with disabilities in employment and hiring (Title I), access to public services (Title II), and public accommodations (Title III)." *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (internal quotation marks omitted). Title I of the ADA prohibits employment discrimination based on disability. 42 U.S.C. § 12112(a). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III of the ADA requires "reasonable modifications in [public accommodations'] policies, practices, or procedures." 42 U.S.C. § 12182(b)(2)(A)(ii).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). "Program or activity," in turn, is defined as

> all of the operations of [] (A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

*Id.* § 794(b)(1).

While Plaintiff explicitly cites Title II and III under the ADA in the Amended Complaint, (Am. Compl. ¶ 333), it is not clear whether she intended to only bring claims under these two titles. Thus, I analyze Plaintiff's allegations under each Title. As an initial matter, any Title I claim is doomed because Plaintiff failed to satisfy Title I's administrative exhaustion requirement. *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (per curiam) ("The language and structure of the ADA demonstrate that Title III, unlike Title I, does not require administrative exhaustion.").[12] "[A] Title I plaintiff is required to exhaust her administrative remedies before filing a federal suit: she must make a timely complaint to the EEOC, receive a right-to-sue letter, and then file suit within 300 days." *Transp. Workers Union*

---

[12] The Second Circuit has indicated that Title II does not appear to have an administrative exhaustion requirement because it mirrors the "remedies, procedures, and rights set forth in the" Rehabilitation Act, which does not have an exhaustion requirement, but has not explicitly ruled on the matter. *See Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 170 n. 11 (2d Cir. 2013).

*of Am., Loc. 100v. N.Y.C. Transit Auth.*, 342 F. Supp. 2d 160, 171 (S.D.N.Y. 2004). Plaintiff has not indicated that she has satisfied any of these requirements. *See Barbuto v. Syracuse Univ.*, No. 23-CV-245, 2026 WL 820769, at *12 (N.D.N.Y. Mar. 25, 2026) (explaining that plaintiff could not sustain a Title I claim under the ADA because he did not satisfy the administrative exhaustion requirements, which require plaintiffs to "file an EEOC charge within 180 days of the alleged discrimination, or within 300 days if the plaintiff has already filed a charge with the state or local employment agency").

To the extent Plaintiff is asserting claims under Title II and III of the ADA against the NYPH Defendants, they also fail. Coney has alleged no facts against the NYPH Defendants regarding disability discrimination, their disability accommodation policies, or any other actions against Plaintiff based on her disability. Indeed, even though Plaintiff brings this claim against all defendants, she only notes that "Columbia's actions and omissions constitute unlawful discrimination on the basis of disability." (Am. Compl. ¶ 333.) She does not make any allegations in the Amended Complaint regarding disability discrimination that occurred while she was on her obstetrics rotation at an NYPH facility, (*see id.* ¶ 183 (characterizing her "reports" to NYPH as one based on only race discrimination)), and disability discrimination ostensibly happened only in connection with the University as described by her Amended Complaint, (*see id.* ¶¶ 78–125 (stating that only "CUSON Commits Disability Discrimination," without alleging any facts against the NYPH Defendants)). Similarly, Plaintiff's claims under the Rehabilitation Act are doomed because there is no allegation that Plaintiff was denied any opportunity "by reason of [her] disability, let alone solely by reason of [her] disability, as the Rehabilitation Act requires." *Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009) (internal quotation marks omitted). Nothing in Plaintiff's Amended Complaint indicates that further facts would

change this outcome, as Plaintiff was not seeking accommodations while on her obstetrics rotation at an NYPH facility. I do not believe additional facts can establish any evidence that Plaintiff was denied access to accommodations or discriminated against based on her disability when she characterizes Just-Michael's "outburst" as solely "racialized" and part of a "broader climate of hostility towards Black students in clinical spaces." (Am. Compl. ¶ 182–83; *see also* Doc. 131 at 2 (describing the incident with Just-Michael as a "terrifying and humiliating experience infused with racial bias" and placing it in the context of a history of racial discrimination in the U.S. against Black individuals).) Accordingly, I GRANT the NYPH Defendants' motion to dismiss in regard to Plaintiff's ADA and Rehabilitation Act claims and dismiss these claims with prejudice. *See Hott v. MultiPlan, Inc.*, No. 21-CV-02421, 2023 WL 185495, at *8 (S.D.N.Y. Jan. 13, 2023) (dismissing claim with prejudice because amendment would be futile).

d. Family Educational Rights and Privacy Act (Count 10)

Plaintiff argues that Defendants violated FERPA "by improperly accessing, reviewing, and using Plaintiff's academic records, disability documentation, and video surveillance footage without proper notice or consent, and in retaliation for Plaintiff's prior complaints and accommodation requests." (Am. Compl. ¶ 353.) Plaintiff does not allege facts with regard to the NYPH Defendants, and regardless, this claim must be dismissed because "there is no private right of action under FERPA." *Capone v. Patchogue-Medford Union Free Sch. Dist.*, No. 04-CV-2947, 2006 WL 8440257, at *6 (E.D.N.Y. Sept. 15, 2006); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) ("There is no question that FERPA's nondisclosure provisions fail to confer enforceable rights."); *Rabin v. Wilson-Coker*, 362 F.3d 190, 201 (2d Cir. 2004) ("[FERPA] did not create individual rights."). Accordingly, because amendment is futile, I

GRANT the NYPH Defendants' motion to dismiss Plaintiff's FERPA claim and dismiss this claim with prejudice.

e. Title IV (Count 11)

Plaintiff also alleges that Defendants violated Title IV of the Higher Education Act of 1965 ("HEA") and its implementing regulation, 34 C.F.R. § 685.202, by "delaying, withholding, and mismanaging Plaintiff's federal financial aid and student loan disbursements." (Am. Compl. ¶ 362.) The Second Circuit has held that "the HEA does not provide student borrowers a private right of action to enforce its provisions," *Sanon v. Dep't of Higher Educ.*, 453 F. App'x 28, 30 (2d Cir. 2011) (summary order) (citing *Josey v. Sallie Mae, Inc.*, No. 09-CV-04403, 2009 WL 2518643, at *5 & n. 8 (S.D.N.Y. Aug. 17, 2009) (collecting cases)), and "nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions," *Nehorai v. U.S. Dep't of Educ. Direct Loan*, No. 08-CV-00920, 2008 WL 1767072, at *1 (E.D.N.Y. Apr. 14, 2008) (quoting *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002) (collecting cases)). Because Congress did not intend to make a private remedy available, I GRANT the NYPH Defendants' motion to dismiss as to Plaintiff's Title IV claim and dismiss this claim with prejudice.

f. Nurse Corps Scholarship Program Statute—42 U.S.C. § 297n (Count 12)

Next, Plaintiff attempts to bring a claim under 42 U.S.C. § 297n, a statute under the HSRA Nurse Corps Scholarship program. However, this claim must also be dismissed because there is nothing in the statute to suggest either an express or implied right of action or remedy for students like Plaintiff.

"Private rights of action to enforce federal law must be created by Congress." *Rep. of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014) (alterations adopted) (quoting *Alexander*, 532

U.S. at 286). In considering whether a statute confers an implied private right of action, "the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* (alterations adopted) (quoting *Sandoval*, 532 U.S. at 286). A court "must begin its search for Congress's intent with the text and structure of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." *Cohen v. Viray*, 622 F.3d 188, 193 (2d Cir. 2010) (quoting *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007)). In deciding whether Congress created a private right of action, a court may consider: "whether the plaintiff is a member of the class for whose special benefit the statute was created; whether there is an indication of either an explicit or implicit legislative intent to create or deny a private remedy; whether an implied remedy is consistent with the underlying purposes of the statute; and whether the cause of action is one that traditionally is relegated to state law." *HK Cap. LLC v. Fed. Deposit Ins. Corp.*, 734 F. Supp. 3d 288, 297–98 (S.D.N.Y. 2024) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 23–24 (1979) (internal quotation marks omitted).

As an initial matter, this statute authorizes the Secretary of Health and Human Services ("HHS") to dispense funds in the form of scholarships and loan repayments in exchange for students working for two years as a nurse at a health care facility "with a critical shortage of nurses" or in an "accredited school of nursing." 42 U.S.C. § 297n(a). Further, the statute indicates that if an individual fails to maintain an acceptable level of academic standing in the nursing program, is dismissed from the nursing program for disciplinary reasons, or voluntarily terminates the nursing program, "the individual is liable to the Federal Government for the

amount of such award." 42 U.S.C. § 297n(g). In other words, the purpose of the statute is to provide government financial incentives to nursing students and professionals to encourage them to work in areas with critical staff shortages.

However, while Plaintiff might be part of the intended class of beneficiaries from the statute—nursing students contributing to critical care shortages—there is nothing in the statute that suggests an explicit or implicit intent to confer enforceable rights to students or program participants who are recipients of these funds. Nor would such an implied remedy be consistent with the underlying intent of the statute. The statute is structured as a funding program and administrative directive to a federal agency, and a federal spending program of this nature does not imply a private right of action for student lawsuits regarding terminated awards. *See Williams v. Fletcher*, No. 18-CV-122, 2018 WL 3489240, at *2 (E.D. Ky. July 19, 2018) (noting that because federal statute is "primarily a funding statute . . . it does not create rights enforceable by a private party in a civil action"). Indeed, this statute actually delegates enforcement of these scholarship agreements to HHS, noting that a breach of this agreement means that "[i]n the case of a program under this section that makes an award of Federal funds for attending an accredited program of nursing . . . the individual is liable to the Federal Government for the amount of such award." 42 U.S.C. § 297n(g). There is no contrary indication that a student can sue the federal government or a nursing institution for termination of these funds. Thus, there are no grounds from which to assume Congress intended that individuals or private parties have a right to sue under 42 U.S.C. § 297n. *See HK Cap. LLC*, 734 F. Supp. at 298 (finding no basis to conclude that Congress intended to establish a private right of action under the federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as neither the statutory text nor the legislative history contains any indication of such

intent). Thus, I GRANT the NYPH Defendants' motion to dismiss Plaintiff's 42 U.S.C. § 297n claim and dismiss this claim with prejudice.

g. Violation of Procedural and Substantive Due Process Rights under the Fourteenth Amendment (Count 13)

Plaintiff vaguely asserts a Fourteenth Amendment claim as part of Count 13. However, "Fourteenth Amendment claims . . . can only be maintained against state actors or against private actors whose conduct can be fairly attributable to the state. *Leahy v. Gap, Inc.*, No. 07-CV-2008, 2008 WL 2946007, at *3 (E.D.N.Y. July 29, 2008); *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989) ("When the asserted constitutional deprivation is based upon a right guaranteed against government interference—for example, rights secured by the Fourteenth Amendment—plaintiffs must demonstrate some 'state involvement.'" (citing *United Bhd. of Carpenters, Loc. 610 v. Scott*, 463 U.S. 825, 832 (1983)). "New York Presbyterian Hospital is not considered a state actor, even if it is licensed and regulated by the state." *Roberts v. N.Y. Presbyterian Hosp.*, *Queens*, No. 24-CV-1352, 2024 WL 1413030, at *2 (E.D.N.Y. Apr. 2, 2024). "Likewise, courts in a wide array of cases have concluded that Columbia University and its employees are not state actors but rather are private entities." *Yourman II*, 2026 WL 690502, at *3 (collecting cases); *Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir. 2000) (where defendant "[h]ospital is owned and administered by a private corporation" and "is not a state or municipal facility," then "[h]ospital was . . . not a state actor"). Nor is Defendant Just-Michael, as an employee of NYPH, a state actor. Amendment of this claim cannot cure this deficiency. Thus, I GRANT the NYPH Defendants' motion to dismiss this claim and dismiss Plaintiff's Fourteenth Amendment claim with prejudice.

h. Criminal Extortion (Count 17 and Count 18) and Obstruction of Justice and Retaliation Against a Whistleblower —18 U.S.C. §§ 1513(e), 1512(b), and 1519 (Count 25)

Plaintiff attempts to assert multiple civil claims based on criminal statutes against the NYPH Defendants, including criminal extortion under N.Y. Penal Law §§ 155.05–155.08 and "Obstruction of Justice Against a Whistleblower," pursuant to 18 U.S.C. §§ 1513(e), 1512(b), and 1519. "[I]n the absence of any guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes." *Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996) (internal quotation marks omitted). "[E]nforcement of the New York Penal Law is committed exclusively to New York State's prosecutors." *Manko v. Volynsky*, No. 95-CV-2585, 1996 WL 243238, at *2 (S.D.N.Y. May 10, 1996). Moreover, "[v]iolations of the Criminal Code do not provide a basis for a civil cause of action, unless the particular provision in question includes an express or implied private right of action." *Weinstein v. City of New York*, No. 13-CV-06301, 2014 WL 1378129, at *4 (S.D.N.Y. Apr. 8, 2014), *aff'd*, 622 F. App'x 45 (2d Cir. 2015). The federal criminal statutes that Plaintiff cites do not provide for a private right of action. *See Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578, 2020 WL 3181785, at *15 (S.D.N.Y. June 15, 2020) (noting that no private right of action exists under 18 U.S.C. § 1512 or 18 U.S.C. § 1513); *Bender v. City of New York*, No. 09-CV-3286, 2011 WL 4344203, at *2 (S.D.N.Y. Sept. 14, 2011) (same); *Weinstein*, 2014 WL 1378129, at *4 (same); *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 301 n.1 (E.D.N.Y. 2014) ("The Court notes that there is no private right of action under 18 U.S.C. Section 1519."). Thus, the NYPH Defendants' motion is GRANTED as to these claims, and I dismiss them with prejudice.

i. <u>Retaliation in Violation of 42 U.S.C. § 12203 (Count 19)</u>

Plaintiff brings a retaliation claim pursuant to 42 U.S.C. § 12203 against the NYPH Defendants based on an "adverse action" that Defendants took against her after she "complained about the discrimination and harassment faced by Black and disabled students at Columbia."

(Am. Compl. ¶¶ 406–08.) The ADA prohibits retaliation against an individual who has "opposed any act or practice made unlawful under the ADA." 42 U.S.C. § 12203(a). To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

First, Plaintiff's claim against Just-Michael must be dismissed because Section 12203(a) "cannot provide for individual liability." *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010). Second, Plaintiff also fails to establish that NYPH was her employer, which is required to bring a retaliation claim under this ADA provision. *See Post v. Trinity Health-Michigan*, 44 F.4th 572, 578 (6th Cir. 2022) (noting that "employees may sue only their employers for [Section 12203(a)]" violations). The ADA defines an "employer" in relation to its employees. *See* 42 U.S.C. § 12111(4), (5). In determining whether an individual is an "employee" within the meaning of the ADA, courts look to the common law of agency. *See, e.g.*, *Clackamas Gastroenterology Assoc., P.C. v. Wells*, 538 U.S. 440, 444-48 (2003) (finding ADA definition of "employee" circular and turning to common law of agency to resolve dispute). In determining what constitutes an employer-employee relationship under the common law of agency, courts look to thirteen factors set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*: (1) the hiring party's right to control the "manner and means by which the product is accomplished," (2) "the skill required," (3) "the source of instrumentalities and tools" required for the job, (4) "the location of the work," (5) "the duration of the relationship between the parties," (6) "whether the hiring party has the right to assign additional projects to the hired

party," (7) the "extent of the hired party's discretion over when and how long to work," (8) "the method of payment," (9) "the hired party's role in hiring and paying assistants," (10) "whether the work is part of the regular business of the hiring party," (11) "whether the hiring party is in business," (12) the "provision of employee benefits," and (13) the "tax treatment of the hired party." 490 U.S. 730, 751–52 (1989) (citations omitted).

Here, Plaintiff fails to establish that NYPH was her employer. In her Amended Complaint, she characterizes NYPH as an institution that provides "clinical training and educational opportunities for nursing students and partners with various academic institutions to support healthcare education and professional development." (Am. Compl. ¶ 10.) Plaintiff notes that between October and November of 2024, she took part in a rotation at the Alexander Cohen Hospital for Women and Children, an NYPH facility, as part of her Columbia University coursework, and was supervised by Columbia University faculty. (*Id.* ¶ 162.) Although NYPH nurses and Just-Michael interacted and instructed Plaintiff during her rotation, (*see id.* ¶¶ 162–83), she was evaluated, assessed, and graded only by Columbia University faculty, (*see id.* ¶¶ 184–207). Even the punishment Plaintiff describes—being disciplined and given a low grade in the rotation—is not termination from her rotation, nor was it decided by NYPH. It does not appear that additional facts about the relationship between NYPH and Plaintiff would establish an employer-employee relationship when Plaintiff was clearly on a clinical rotation as part of coursework as a student and even received a scholarship specifically within her capacity as a student. *See Piotrowski v. Barat Coll.*, No. 93 C 6041, 1994 WL 594726, at *1 (N.D. Ill. Oct. 27, 1994) (noting that the plaintiff was not an employee because he worked in a capacity limited to students enrolled in the school's nursing program). In sum, Plaintiff fails to state a Section 12203(a) claim against the NYPH Defendants, and I GRANT their motion as to this claim and

dismiss it with prejudice, because amendment is futile. *See Hott*, 2023 WL 185495, at *8.

j. Title IX (Count 20)

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Because Title IX prohibits . . . subjecting a person to discrimination on account of sex, it is understood to 'bar[] the imposition of university discipline where gender is a motivating factor in the decision to discipline.'" *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). In evaluating Title IX claims, courts consider the principles governing claims under Title VI and Title VII. *See Yusuf*, 35 F.3d at 714. "Unlike Title VII, however, Title IX claims may not be predicated on a 'disparate impact' theory." *B.B. v. The New Sch.*, No. 17-CV-8347, 2018 WL 2316342, at *4 (S.D.N.Y. Apr. 30, 2018). A Plaintiff must therefore show "the defendant discriminated against him [or her] because of [his or her] sex; that the discrimination was intentional; and that the discrimination was a substantial or motivating factor for the defendant's actions." *Prasad v. Cornell Univ.*, No. 15-CV-322, 2016 WL 3212079, at *14 (N.D.N.Y. Feb. 24, 2016) (internal quotation marks omitted); *see also B.B.*, 2018 WL 2316342, at *4.

As an initial matter, Plaintiff's Title IX claim against Just-Michael fails. The Supreme Court has held that Title IX creates liability only for institutions and programs that receive federal funds, but "has consistently . . . interpreted [it] as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). Accordingly, numerous courts in this Circuit have held that individuals, who are not recipients of these funds, cannot be held liable. *See, e.g.*, *KF ex rel. CF v. Monroe Woodbury*

*Cent. Sch. Dist.*, 2013 WL 177911, at *8 (S.D.N.Y. Jan. 16, 2013), *aff'd*, 531 F. App'x 132 (2d Cir. 2013); *Zamora v. N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 423 (S.D.N.Y. 2006); *Walter v. Hamburg Cent. Sch. Dist.*, No. 04-CV-9965, 2007 WL 1480965, at *8 (W.D.N.Y. May 18, 2007); *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005) (relying on "overwhelming majority of federal courts" that have held that individuals cannot be held liable under Title IX and thus dismissing claims against individual defendants).

Moreover, Plaintiff also fails to state a claim against NYPH under Title IX, because, among other things, she does not plead sufficient facts to show that she was discriminated against on the basis of her sex or that this was intentionally carried out by NYPH. Other than conclusory statements that all Defendants intentionally discriminated against her on the basis of her sex, Plaintiff pleads no specific allegations demonstrating that the actions of the NYPH Defendants were intentional. Indeed, the only thing Plaintiff notes is that after she complained about her interaction with Just-Michael in the obstetrics rotation, NYPH "failed to investigate the matter thoroughly or provide a restorative response." (Am. Compl. ¶ 183.) However, far more is needed to satisfy Title IX's intentionality requirement, even at the motion to dismiss stage. *See, e.g.*, *Doe v. Columbia Univ.*, 831 F.3d at 56–59 (noting that allegations regarding flaws in the university's investigation process for sexual misconduct complaints against male students on their own do not satisfy the element of discriminatory intent under Title IX because "they do not necessarily relate to bias on account of sex," and finding that it was plaintiff's additional allegations that the university was under public pressure "accusing the University of not taking seriously complaints of female students alleging sexual assault by male students" that gave rise to a plausible inference of discriminatory intent); *Roe v. St. John's Univ.*, 91 F.4th 643, 654 (2d Cir. 2024) (affirming district court's dismissal of the plaintiff's Title IX claim and explaining

that "allegation that a university conducted its disciplinary proceedings in a less-than-flawless manner does not automatically permit a factfinder to reasonably infer that a university has committed sex discrimination"); *Yusuf*, 35 F.3d at 716 ("[A]llegations of a . . . flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss.").

Nor does Plaintiff plead any facts at all regarding sex-based discrimination with regard to her obstetrics rotation. She only alleges race-based discrimination, asserting that Just-Michael's reaction and scolding of Plaintiff after she was found with an infant patient "was infused with racial bias and aligned with historical patterns of perceiving Black individuals as inherently dangerous or less competent in professional settings." (Am. Compl. ¶ 182; *see also* Doc. 131 at 2–4 (describing the incident with Just-Michael as a "terrifying and humiliating experience infused with racial bias" and placing it in the context of a history of racial discrimination in the U.S. against Black individuals).) Additionally, I find that amendment would be futile here, because there is no evidence that additional details would demonstrate that there existed any sex-based discrimination facts relevant to the NYPH Defendants. Therefore, I GRANT the NYPH Defendants' motion as to Plaintiff's Title IX claim and dismiss this claim with prejudice.

k. <u>Civil RICO (Count 26)</u>

Plaintiff accuses the NYPH Defendants of violating the civil RICO statute, specifically 18 U.S.C. § 1962(c), and alleges that "Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity . . . which included, but was not limited to, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), financial aid fraud, falsification and manipulation of federally regulated educational records, obstruction of justice (18 U.S.C. § 1503), and retaliation against a federally protected

whistleblower." (Am. Compl. ¶ 470.)

To plead a civil RICO claim, a plaintiff must show: "(1) a substantive RICO violation under 18 U.S.C. § 1962, (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of the substantive RICO violation." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 83 (2d Cir. 2015) (citation modified). To plead a substantive RICO violation, a plaintiff must allege: "(1) that the defendants (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-CV, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022) (summary order) (alterations adopted and internal quotation marks omitted).

Here, Plaintiff fails to plead the existence of an "enterprise." Although an enterprise need not be one formal group, an enterprise's individual entities must be "associated together for a common purpose of engaging in a course of conduct" so as to constitute a "continuing unit." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). These members must "share a common purpose to engage in a particular fraudulent course of conduct" and cooperate in furtherance of that goal. *First Cap. Asset Mgmt. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).

Plaintiff's sprawling seventy-two-page Amended Complaint fails to plead the existence of an enterprise. Instead, the Amended Complaint is a hodgepodge of conclusory accusations, noting that all Defendants formed an enterprise "consisting of various Columbia University departments, including but not limited to the Columbia University in the City of New York, the Columbia University School of Nursing (CUSON), Student Financial Services (SFS), the Office of Disability Services (ODS), the Office of Institutional Equity (OIE), and administrative

personnel, including named Defendants." (Am. Compl. ¶ 469.) The NYPH Defendants are not even named as part of the enterprise—although Plaintiff tries to rescue this deficiency in her opposition by referring to the "Columbia-NYPH partnership." (Doc. 131 at 12.) Plaintiff's attempt to save this claim is unavailing. As an initial matter, Plaintiff cannot amend the Amended Complaint using her opposition. *See Goldman v. Vox Media, LLC*, No. 25-CV-9910, 2026 WL 1802804, at *1 n.3 (S.D.N.Y. June 23, 2026) ("[A] party may not amend a complaint through an opposition brief, even when proceeding pro se.") Moreover, this conclusory language is insufficient to plausibly allege the existence of an enterprise. In addition, the Amended Complaint contains no information about "the hierarchy, organization, and activities of the alleged enterprise, from which [I] could fairly conclude that its members functioned as a unit." *Cont'l Fin. Co. v. Ledwith*, No. 08-CV-7272, 2009 WL 1748875, at *5 (S.D.N.Y. June 22, 2009) (internal quotation marks omitted). Plaintiff also claims that a "false email sent by Just-Michael to Columbia faculty (wire transmission) to fraudulently deprive Plaintiff of her educational property rights satisfies, at a minimum, the wire fraud statute." (Doc. 131 at 12.) However, these vague and conclusory accusations that Defendants worked together or conspired together "is not enough if they merely acted together to commit the wrong." *Wild Edibles Inc. v. Indus. Workers of World Loc. 460/640*, No. 07-CV-9225, 2008 WL 4548392, at *1 (S.D.N.Y. Oct. 9, 2008). "Lack of proof of such an independently existing separate enterprise dooms a RICO claim." *Id.* Further, mere descriptions of each defendant's "purported roles in the enterprise does not cure" a deficiency where "there was no plausible basis to infer that its members formed an ongoing organization and acted on its behalf." *Heinrich v. Dean*, 655 F. Supp. 3d 184, 191 (S.D.N.Y. 2023). Plaintiff's Amended Complaint is chock full of legal conclusions but lacks factual allegations sufficient to plausibly allege the existence of a RICO enterprise. *See Lubin v.*

*Dubin*, No. CV 13-6619, 2014 WL 794313, at *7 (E.D.N.Y. Feb. 24, 2014) ("The conclusory pleading that Defendants each played a part in perpetrating a fraud on Plaintiffs is not enough to satisfy RICO's requirement of an organized, separate enterprise."). Because I find that Plaintiff has failed to plead the existence of a RICO enterprise, I need not decide whether she has met the other elements of a civil RICO claim. Therefore, I GRANT the NYPH Defendants' motion to dismiss as to Plaintiff's civil RICO claim and dismiss this claim without prejudice.

In sum, I GRANT the NYPH Defendants' motion to dismiss regarding all of Plaintiff's federal claims. Plaintiff's Title VI claim is dismissed without prejudice against NYPH, and her Section 1986 and civil RICO claims are dismissed without prejudice against the NYPH Defendants. All her other federal claims against the NYPH Defendants are dismissed with prejudice.

**2. State Claims**

Plaintiff also brings various state law claims predicated on "supplemental jurisdiction" based on her federal law claims. (Am. Compl. ¶ 31.) Supplemental jurisdiction exists over state law claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In other words, federal courts may assert supplemental jurisdiction over claims that "derive from a common nucleus of operative fact." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (internal quotation marks omitted).

Because I have dismissed Plaintiff's federal claims, I must now decide whether to exercise supplemental jurisdiction over her remaining state claims. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although

this is not "a mandatory rule to be applied inflexibly in all cases, . . . in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (concluding that district court properly declined to exercise supplemental jurisdiction over state law claims when all federal claims had been dismissed); *Ferrara v. Metro. Transp. Auth.*, No. 24-CV-9161, 2026 WL 351084, at *7 (S.D.N.Y. Feb. 9, 2026) (declining to exercise supplemental jurisdiction over state law claims after federal discrimination and retaliation claims under the ADA and Rehabilitation Act were dismissed).

I see no reason to depart from this principle in this case. Accordingly, I GRANT the NYPH Defendants' motion to dismiss as to Plaintiff's state law claims, and these claims are also dismissed without prejudice.

### B. *Columbia Defendants' Motion to Dismiss*

Plaintiff asserts 22 of the 27 federal and state claims against all the Columbia Defendants and asserts all 27 claims against the University, CUSON and some of the Columbia-affiliated individual defendants, including "All Administrative Defendants Involved in Financial and Academic Misrepresentations" for some counts.[13] The Columbia Defendants move to dismiss

[13] Although Plaintiff references certain civil rights statutes in her Amended Complaint, including 42 U.S.C. §§ 1981 and 1982, she does not separately allege facts and causes of action under these statutes until her opposition brief against the Columbia Defendants. (*See* Doc. 132 at 13–14, 16–16.) Indeed, Plaintiff attempts to raise allegations for the first time under Sections 1981 and 1983 and provides information about a state claim under intentional infliction of emotional distress for the first time in her opposition. (*Id.* at 13–19.) "However, the liberal pleading standard afforded to *pro se* litigants does not apply to new causes of actions that are raised for the first in an opposition brief." *Snyder v. Allen*, No. 18-CV-08238, 2020 WL 1233815, at *3 (S.D.N.Y. Mar. 13, 2020). However, while a "*pro se* plaintiff may not raise entirely new causes of action for the first time in [her] opposition papers, . . . [I] may consider

Plaintiff's claims in part. Thus, I evaluate each argument in turn.[14]

First, the Columbia Defendants argue for dismissal of Plaintiff's FERPA claim (Count 10 and 24) because this statute "does not create a private right of action for individuals to sue for alleged privacy violations." (Doc. 116 at 9.) I agree. As I previously stated, "there is no private right of action under FERPA," *Capone*, 2006 WL 8440257, at *6, and "[t]here is no question that FERPA's nondisclosure provisions fail to confer enforceable rights," *Gonzaga Univ.*, 536 U.S. at 287. Thus, I GRANT the Columbia Defendants' motion to dismiss as to this claim and dismiss the claim with prejudice, because amendment is futile. *See Hott*, 2023 WL 185495, at *8.

Second, the Columbia Defendants contend that Plaintiff's claim under Title IV of the Higher Education Act of 1965 ("HEA") and its implementing regulation, 34 C.F.R. § 685.202 (Count 11), alleging that the University mismanaged Plaintiff's federal financial aid, should be

---

new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (internal quotation marks omitted). Even if I liberally construe these claims and find that Plaintiff could assert them based on the factual allegations pleaded in the Amended Complaint, she does not provide sufficient allegations to plausibly state a claim under these new causes of action. Instead, she merely makes the conclusory assertions contained in her opposition. I find that no further amendment could cure these deficiencies. For example, Plaintiff's § 1983 claims fail and amendment would be futile because, at base, "Columbia University and its employees are not state actors . . . and are therefore not subject to suit under 42 U.S.C. § 1983." *Biswas v. Rouen*, No. 18-CV-9685, 2019 WL 5260821, at *4 n.5 (S.D.N.Y. Oct. 16, 2019), *aff'd*, 808 F. App'x 53 (2d Cir. 2020) (internal quotation marks omitted). Thus, these new claims are dismissed with prejudice against the Columbia Defendants.

[14] Although I may dismiss an action sua sponte for lack of subject-matter jurisdiction, *see Oscar Gruss & Son., Inc. v. Hollander*, 337 F. 3d 186, 193 (2d Cir. 2003), typically for a 12(b)(6) motion, "[I] may grant a motion to dismiss only on grounds briefed by a party." *Onwudiwe v. Solomon Page Agency*, No. 24-CV-06977, 2026 WL 658388, at *2 (S.D.N.Y. Mar. 9, 2026). While I can "dismiss a complaint sua sponte for failure to state a claim," "so long as the plaintiff is given notice and an opportunity to be heard," *Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *1 n.1 (S.D.N.Y. Dec. 15, 2015) (internal quotation marks omitted), since the Columbia Defendants only moved to dismiss some of Plaintiff's claims under Rule 12(b)(6), and Plaintiff has not necessarily had notice or an opportunity to respond to the claims that the Columbia Defendants have not moved to dismiss, I do not address her other claims at this time. However, this should not be interpreted as an assessment of the strength or weakness of Plaintiff's surviving claims. Many of the deficiencies in the Amended Complaint, discussed in the Opinion & Order related to Plaintiff's claims against the NYPH Defendants, may also apply to Plaintiff's claims against the Columbia Defendants.

Furthermore, as the Columbia Defendants note in their reply brief, (Doc. 143 at 1–2), any claims that Plaintiff "did not address in [her] opposition brief" in response to their motion to dismiss can be deemed abandoned, and I need not address them. *See Guan N.*, 2014 WL 1275487, at *10. However, I still go through and consider these claims because I liberally construe pro se Plaintiff's pleadings. In any event, Plaintiff has not pled a plausible claim under any of the counts that the Columbia Defendants seek to dismiss, as I further articulate *infra* in this Opinion & Order.

dismissed. (Doc. 116 at 10.) As mentioned *supra*, "the HEA does not provide student borrowers a private right of action to enforce its provisions." *Sanon*, 453 F. App'x at 30 (citing *Josey*, 2009 WL 2518643, at *5 & n. 8 (collecting cases)). Accordingly, I GRANT the Columbia Defendants' motion to dismiss as to Plaintiff's Title IV claim and dismiss the claim with prejudice.

Third, the Columbia Defendants assert that Plaintiff's claims under 42 U.S.C. § 297n, a statute under the HSRA Nurse Corps Scholarship program (Count 12), should be dismissed because the statute does not confer a private right of action. (Doc. 116 at 11–12.) I agree. As discussed previously, I find that nothing in the statute or its legislative history indicates an intention to create an express or implied right of action. Accordingly, the Columbia Defendants' motion is GRANTED as to this claim, and Plaintiff's claim under 42 U.S.C. § 297n is dismissed with prejudice.

Fourth, the Columbia Defendants move to dismiss Count 15, "Bullying," alleging violations of New York's Dignity for All Students Act ("DASA"), N.Y. Educ. Law Art. 2 §§ 10–18. (Doc. 116 at 12–13.) I GRANT the Columbia Defendants' motion as to this claim and dismiss the bullying claim with prejudice, because various courts in this District have made clear that DASA confers no private right of action. *See, e.g.*, *D.C. by Collins v. Eldred Cent. Sch. Dist.*, No. 24-CV-9714, 2025 WL 2855583, at *4 (S.D.N.Y. Oct. 8, 2025); *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 327 (E.D.N.Y. 2016) (holding "there is no private right of action under DASA"); *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 109 (N.D.N.Y. 2016) ("[T]he Court finds that DASA does not provide a private right of action, either express or implied.").

Fifth, the Columbia Defendants argue that Plaintiff fails to state a claim under "Hazing"

(Count 16). (Doc. 116 at 13.) Plaintiff claims that Defendants subjected her "to humiliating, isolating, and degrading treatment under the guise of professional training, mentorship, or academic evaluation" and she experienced "emotional distress" and "academic harm." (Am. Compl. ¶¶ 393–95.) However, she does not suggest which statute she brings these claims pursuant to in her Amended Complaint. In any event, I am unaware of any statute under which these allegations are actionable. "Although courts liberally construe the pleadings of pro se litigants, they may not supply a legal theory where none is plausibly alleged." *Collins v. Volunteers of Am. Delaware Valley, Inc.*, No. 25-14328, 2026 WL 622681, at *3 (D.N.J. Mar. 5, 2026) (citation omitted). Plaintiff cites New York criminal hazing statutes in her opposition brief. (Doc. 132 at 20.) "But plaintiff cannot introduce a new claim by means of a brief." *Williams v. Am. Int'l Grp., Inc.*, No. 01-CV-9673, 2002 WL 31115184, at *1 (S.D.N.Y. Sept. 23, 2002). "Her proper recourse would be to request leave to amend her complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure." *Id.* Moreover, even if I were to allow Plaintiff's clarification in her opposition brief and liberally construe her claims as pursuant to criminal hazing statutes, *see* N.Y.P.L. §§ 120.16, 120.17, New York courts have only recognized a very limited private right of action related to these criminal hazing statutes, where a party brings a related negligence claim where physical harm results from initiation into an organization. *See e.g.*, *Oja v. Grand Chapter of Theta Chi Fraternity, Inc.*, 667 N.Y.S.2d 650, 652 (N.Y. Sup. Ct. 1997) (recognizing a negligence claim, which "alleges a private right of action based on Section 120.16 of the Penal Law," based on "traditional tort concepts" where "underage drinker had been coerced and bullied into a state of intoxication as a condition of admittance to a college fraternity" because courts have recognized "the enormous peer pressures operating upon young men, beyond childhood but not yet adults, who find themselves in the throes of male bonding").

This narrow window to bring such claims is not present in this case, and Plaintiff cannot otherwise generally assert a claim under these New York criminal hazing statutes. Thus, I GRANT the Columbia Defendants' motion on this claim and dismiss the hazing claim with prejudice.

Sixth, the Columbia Defendants contest Plaintiff's claims under various criminal statutes: (1) Criminal Extortion (Count 17 and Count 18); (2) Mail Fraud—18 U.S.C. § 1341 (Count 21); Wire Fraud—18 U.S.C. § 1343 (Count 22); (3) Falsification and Manipulation of Federally Regulated Education Records—18 U.S.C. §§ 1001, 1519 (Count 24); (4) Obstruction of Justice and Retaliation Against a Whistleblower —18 U.S.C. §§ 1513(e), 1512(b), and 1519 (Count 25); and (5) "Violation of 26 U.S.C. § 7206 and Related Statutes" (Count 27). (Doc. 116 at 13–16.) As I explained *supra*, criminal extortion (Count 17 and Count 18) and "Obstruction of Justice and Retaliation Against a Whistleblower" pursuant to 18 U.S.C. §§ 1513(e), 1512(b), and 1519 (Count 24) must be dismissed with prejudice against the Columbia Defendants because they do not confer a private right of action. I also GRANT the Columbia Defendants' motion as to Plaintiff's claims under these other criminal statutes and dismiss them with prejudice for the same reasons.[15] *See Vidurek v. Koskinen*, 789 F. App'x 889, 894 (2d Cir. 2019) (summary order) (holding that 18 U.S.C. § 1341 does not provide a private right of action); *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) ("[N]o private right of action exists under either 18 U.S.C. § 1341 or 18 U.S.C. § 1343."); *Momot v. Dziarcak*, 208 F. Supp. 3d 450, 460 (N.D.N.Y. 2016) (dismissing claims under 18 U.S.C. § 1001 because "the statute in question

[15] Plaintiff also brings a claim under "Financial Aid Fraud and Misuse of Title IV Funds—20 U.S.C. § 1097; 34 C.F.R. § 668.165" (Count 23), which the Columbia Defendants do not move to dismiss. Although I cannot dismiss this claim at this stage sua sponte, I note that Plaintiff's claim under this statute also has similar defects. *See Bannister v. United States Treasury Dep't*, No. 20-CV-04458, 2021 WL 4443020, at *5 (S.D.N.Y. Sept. 28, 2021) (establishing that 20 U.S.C. § 1097 does not create a private right of action).

here is clearly a criminal statute, aimed at fraud and concealment with respect to a government agency, and contains no implication or suggestion of a private right of action" (collecting cases)); *Freedom Calls Found. v. Bukstel*, No. 5-CV-5460, 2006 WL 845509, at *28 (E.D.N.Y. Mar. 3, 2006) ("[T]here is no private right of action available to [claimant] under 26 U.S.C. § 7206.").

Seventh, the Columbia Defendants contend that Plaintiff's claims under the ADA (Count 8), 42 U.S.C. § 12203 (Count 19), the Rehabilitation Act (Count 9), Title VI (Count 1), and Title IX (Count 20) should be dismissed against the individual Columbia defendants. (Doc. 116 at 16–19.) I agree. I have already dismissed with prejudice the claims under 42 U.S.C. § 12203 (Count 19), Title VI (Count 1), and Title IX (Count 20) against Defendant Just-Michael because these statutes cannot confer individual liability. Therefore, I extend the same reasoning to the individual Columbia defendants and GRANT the Columbia Defendants' motion to dismiss as to these claims. Moreover, with regard to Plaintiff's Title II ADA claims (Count 8) and her Rehabilitation Act claims (Count 9), "[t]here is no individual liability under Title II of the ADA or under the Rehabilitation Act." *Mcmurray v. Levin*, No. 26-CV-3819, 2026 WL 2033995, at *3 (S.D.N.Y. July 9, 2026). "Under Title III of the ADA, 'the question of whether a person is a proper defendant under the ADA turns [ ] on . . . whether the defendant *owns*, *leases*, or *operates* a place of public accommodation within the meaning of the ADA.'" *Askins v. Weinberg*, No. 19-CV-8793, 2022 WL 4567695, at *7 (S.D.N.Y. Sept. 29, 2022) (quoting *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 215 (E.D.N.Y. 1999)) (emphasis in original). "To operate a place of public accommodation, an individual must be responsible for making decisions regarding disabled persons." *Id.* (internal quotation marks omitted) (alterations adopted). Here, "Plaintiff has not alleged any facts demonstrating that any of the individual defendants 'exerted any

influence over [Columbia's] accommodation policies,' or that it is an individual, rather than the 'institution that has the power to make any accommodations required by law.'" *Id.* (quoting *Schenk v. Verizon*, No. 10-CV-6281, 2011 WL 1044560, at *1 (S.D.N.Y. Mar. 17, 2011) and *Coddington*, 45 F. Supp. 2d at 217). "Where, as here, plaintiff seeks relief based upon discrimination allegedly practiced by an educational institution, it is the institution that has the power to make any accommodations required by law." *Coddington*, 45 F. Supp. 2d at 217. Here, Plaintiff pursues her ADA and Rehabilitation Act claims directly against Columbia University. Thus, Plaintiffs Title II and Title III claims under the ADA and Rehabilitation Act against the individual Columbia defendants must also be dismissed with prejudice, and I grant the Columbia Defendants' motion to dismiss as to these claims.

Eighth, I also dismiss Plaintiff's Title II ADA claim (Count 8) against the institutional Columbia Defendants, Columbia University and CUSON. (*See* Doc. 116 at 19.) As the Columbia Defendants note, "Columbia University is a private institution that was founded in 1754." *Columbia University*, U.S. NEWS, https://www.usnews.com/best-colleges/columbia-university-2707 (last accessed Sept. 29, 2026). Therefore, any Title II claims are doomed because "private universities . . . are not public entities subject to Title II, even if they receive government funding." *Wiltz v. New York Univ.*, No. 19-CV-3406, 2019 WL 8437456, at *7 (S.D.N.Y. Dec. 23, 2019) (collecting cases), *report and recommendation adopted*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020). Accordingly, I GRANT the Columbia Defendants' motion and dismiss Plaintiff's Title II ADA claim against Columbia University and CUSON with prejudice.

Ninth, the Columbia Defendants also seek dismissal of Plaintiff's breach of contract (Count 5) claim against the individual Columbia defendants because she "does not allege the

existence of any contractual agreement between herself and any of the Individual Defendants in their personal capacities." (Doc. 116 at 19.) To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of an agreement between plaintiff and defendant; (2) adequate performance of the contract by plaintiff; (3) breach of contract by defendants, and (4) damages. *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 290 (S.D.N.Y. 1995). The existence of a contract is premised upon the presence of consideration, i.e., either a benefit to the promisor or a detriment to the promisee. *Weiner v. McGraw–Hill, Inc.*, 443 N.E.2d 441, 444–45 (N.Y. 1982). Here, I agree that Plaintiff has not adequately pled the existence of a contract related to the individual Columbia defendants. Courts in this circuit have consistently rejected the existence of an express or implied contract between a student and individual university employees. *See, e.g.*, *Coddington*, 45 F. Supp. 2d at 218–19 ("Upon review of the allegations of the complaint the court holds that plaintiff's complaint sufficiently pleads the existence of a contractual agreement—but only between plaintiff and Adelphi University and not between plaintiff and any Individual Defendant."). Thus, because Plaintiff cannot successfully amend this claim, I GRANT the Columbia Defendants' motion as to Plaintiff's breach of contract claim and dismiss this claim with prejudice against the individual Columbia defendants.

Tenth, the Columbia Defendants argue that Plaintiff's claim alleging violations of New York General Business Law ("GBL") §§ 349, 350 (Count 6) should also be dismissed against all individual Columbia defendants. (Doc. 116 at 21–22.) GBL §§ 349 and 350 prohibit consumer deception and false advertising. GBL § 349 prohibits "deceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 349(a). GBL § 350 prohibits "[f]alse advertising in the conduct of any business,

trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 350. To establish a claim under either statute, a plaintiff must show that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.* 967 N.E.2d 675. 675 (N.Y. 2012)).

I find that Plaintiff has failed to allege any specific factual allegations concerning the individual Columbia defendants. In her Amended Complaint, she alleges that "Columbia's conduct, statements, and representations described above, were consumer-oriented and were aimed at, and had a broad impact on, a large consumer group, namely, prospective and current students of Columbia." (Am. Compl. ¶ 297.) Moreover, "[t]representations were materially misleading, as Columbia's actual practices—including its failure to equitably administer accommodations, its disparate treatment of Black students, and its mishandling of financial aid—directly contradicted those public assurances." (*Id.*) "As a result, Plaintiff relied on Columbia's deceptive and misleading statements when choosing to apply, enroll, and remain at the university, thereby suffering concrete educational, financial, emotional, and professional harm." (*Id.*) But Plaintiff fails to allege any facts at all about whether the individual Columbia defendants engaged in consumer orientated conduct that was materially misleading. *See Bailey v. New York Law Sch*., No. 16-CV-4283, 2017 WL 835190, at *8 (S.D.N.Y. Mar. 1, 2017), *aff'd*, No. 19-3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) (dismissing claims against individual defendants where no deceptive acts were specifically attributed to them relating to New York Law School's advertisements and marketing aimed at consumers). Moreover, I find that amendment is futile, as I do not believe that there exist additional facts that could be alleged that

would support Plaintiff's proposition of the individual Columbia defendants' liability under these statutes. Thus, Plaintiff's claims under GBL §§ 349, 350 (Count 6) against the individual Columbia defendants are dismissed with prejudice, and I GRANT the Columbia Defendants' motion to dismiss this count.

Eleventh, the Columbia Defendants seek dismissal of Plaintiff's claim under 42 U.S.C. § 1986 (Count 7). (Doc. 116 at 22–23.) As discussed *supra*, claims under this section are only valid "if there is a viable conspiracy claim under section 1985." *Gagliardi*, 18 F.3d at 194. To state a claim for conspiracy to commit a civil rights deprivation under Section 1985(3), a plaintiff must plausibly "allege: (1) a conspiracy; (2) to deprive directly or indirectly any person of equal protection of the laws, or of equal privileges and immunities; and (3) an act in furtherance of the conspiracy; (4) whereby his person or property is injured or he is deprived of any right of a United States citizen." *Roberts v. City of New York*, No. 14-CV-5198, 2016 WL 4146135, at *8 (S.D.N.Y. Aug. 2, 2016) (internal quotation marks omitted). Furthermore, the conspiracy must also be motivated by "invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (per curiam) (internal quotation marks omitted).

The allegations in Plaintiff's Amended Complaint do not support a plausible inference of a conspiracy between any of the Columbia Defendants. She claims that Defendants "plotted, coordinated, and executed a common plan with an agreement and understanding to engage[] in, promote, and encourage harassment, retaliation, discrimination, and intimidation against Plaintiff" and there was a "meeting of the minds," as evidenced by close collaboration between all Defendants. (Am. Compl. ¶ 309–10.) However, with the exception of these conclusory statements, Plaintiff provides no facts suggesting any agreement or meeting of the minds.

*Kalderon*, 495 Fed. Appx. at 108 (plaintiff must plead "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (citation omitted); *see also Ochoa v. Bratton*, No. 16-CV-2852, 2017 WL 5900552, at *9 (S.D.N.Y. Nov. 28, 2017) (dismissing a Section 1985(3) claim on a motion to dismiss where there are no facts that suggest an agreement or meeting of the minds among the defendants). Such conclusory statements are insufficient to state a claim for conspiracy. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (claims of conspiracy "containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (citing *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (collecting cases))).

To the extent that Plaintiff attempts to specify the roles of various individual Columbia defendants and their communications with each other to bolster her Section 1985 conspiracy claim, (*see* Doc. 132 at 16–18 (listing the roles of many of the individual Columbia defendants and alleging their personal involvement in the alleged discrimination and retaliation Plaintiff faced)), these facts also prove unavailing. "[M]embers of the same organization or entity cannot legally conspire together for purposes of Section 1985." *Williams v. New York City Hous. Auth.*, No. 18-CV-5912, 2021 WL 1109842, at *10 (S.D.N.Y. Mar. 23, 2021). Accordingly, the Columbia Defendants' motion to dismiss Plaintiff's Section 1986 claim is GRANTED and this claim is dismissed without prejudice.

Twelfth, the Columbia Defendants seek to dismiss Plaintiff's defamation claim pursuant to New York Civil Rights Law §§ 76–79 (Count 14). (Doc. 116 at 23–25.) She alleges that Defendants "made false and defamatory statements about Plaintiff, both orally and in writing, to individuals inside and outside Columbia, including other faculty members, administrative

offices, and potentially third-party organizations." (Am. Compl. ¶ 383.) "These statements falsely implied that Plaintiff was dishonest, unprofessional, untrustworthy, and unfit for the nursing profession, and were made with actual malice, reckless disregard for the truth, or gross negligence." (*Id.* ¶ 384.) "To state a claim for defamation under New York Law, the plaintiff must allege: (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused special damages." *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (internal quotation marks omitted). "An allegation of defamation is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Djurdjevich v. Flat Rater Movers, Ltd.*, No. 17-cv-261, 2018 WL 1478132, at *7 (S.D.N.Y. Mar. 23, 2018) (internal quotation marks omitted). Thus, "[m]ere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim." *Id.* (internal quotation marks omitted). Here, Plaintiff does not satisfy any of these requirements—it is unclear what false statements were made, or the time, manner, place, or recipient of these statements. Therefore, I GRANT the Columbia Defendants' motion as to this claim and dismiss Plaintiff's defamation claim without prejudice.

Next, I evaluate whether Plaintiff adequately alleges violations of her "Procedural and Substantive Due Process Right" under the Fourteenth Amendment and "relevant federal and state protections," including "New York Constitution (Art. I § 6), Education Law § 310, § 3214, and § 3205" (Count 13). (Am. Compl. ¶¶ 376–81; *see also* Doc. 116 at 25–26 (Columbia Defendants moving to dismiss this claim).) Plaintiff's Fourteenth Amendment claim is easily dismissed with prejudice, because as explained *supra*, "Fourteenth Amendment claims . . . can only be

maintained against state actors or against private actors whose conduct can be fairly attributable to the state." *Leahy*, 2008 WL 2946007, at *3. "[C]ourts in a wide array of cases have concluded that Columbia University and its employees are not state actors but rather are private entities." *Yourman II*, 2026 WL 690502, at *3. Plaintiff's Section 6 claim under the New York Constitution is dismissed with prejudice for similar reasons. "Section[] 6 [of the New York State Constitution] . . . concern[s] the right to be free from certain actions by New York State, not from private parties like [Defendants]." *Alexiadis v. New York Coll. of Health Pros.*, 891 F. Supp. 2d 418, 437 n.19 (E.D.N.Y. 2012). Moreover, none of the New York Education Law statutes cited by Plaintiff are applicable to the circumstances alleged here, and amendment would not change their relevance to this action. *See Caviezel v. Great Neck Pub. Schs.*, 739 F. Supp. 2d 273, 281 (E.D.N.Y. 2010), *aff'd*, 500 F. App'x 16 (2d Cir. 2012) (explaining that Section 310 of the New York Education Law allows person who feels aggrieved by an action taken by a New York school district, school authorities, or a school district meeting to appeal directly to the Commissioner of Education); *Blanco v. Success Acad. Charter Schs., Inc.*, No. 23-CV-1652 (LJL), 2026 WL 1678098, at *8 (S.D.N.Y. June 10, 2026) ("New York Education Law § 3214 specifically authorizes schools to suspend students who are insubordinate, disorderly, violent, disruptive, or whose conduct endangers the safety, morals, health, or welfare of others."); N.Y. Ed. L. 3205 (establishing requirements for compulsory school attendance in the state). Thus, I GRANT the Columbia Defendants' motion to dismiss as to these claims and dismiss Count 13 with prejudice.

Finally, the Columbia Defendants move to dismiss Plaintiff's civil RICO claim (Count 26). (Doc. 116 at 26–28.) For the same reasons articulated *supra* with regard to the NYPH Defendants, I also find that Plaintiff fails to state a civil RICO claim against the Columbia

Defendants. Namely, Plaintiff fails to sufficiently allege a RICO enterprise. Other than conclusory allegations that the Columbia Defendants "functioned as a continuing unit with a common purpose to unlawfully remove Plaintiff from the university," (Doc. 132 at 19), Plaintiff fails to allege any information about "the hierarchy, organization, and activities of the alleged enterprise, from which [I] could fairly conclude that its members functioned as a unit." *Cont'l Fin. Co.*, 2009 WL 1748875, at *5 (internal quotation marks omitted). Accordingly, I GRANT the Columbia Defendants' motion to dismiss Plaintiff's civil RICO claim and dismiss this claim without prejudice.

In sum, I GRANT the Columbia Defendants' motion to dismiss Plaintiff's Amended Complaint in part. I dismiss Plaintiff's Section 1986 (Count 7), defamation (Count 14), and civil RICO (Count 26) claims without prejudice against the Columbia Defendants. All other claims that the Columbia Defendants move to dismiss are dismissed with prejudice.

### C. *Objections to Magistrate Judge Moses' Report & Recommendation Regarding Plaintiff's Motion for Default Judgment and Fisher's Cross-Motion to Vacate Default and Dismiss Claims*

Next, I turn to Plaintiff's default judgment motion and Defendant Fisher's cross-motion to vacate and dismiss the complaint, which were the subject of Magistrate Judge Moses' Report and Recommendation. In her August 7, 2026 Report, Judge Moses notes that Defendant Fisher was never properly served with process so: (1) Plaintiff's motion for default judgment should be denied; (2) Fisher's cross-motion pursuant to Rule 55 is granted, with the entry of default vacated; and (3) her cross-motion pursuant to Rule 12(b)(5) should be granted, and Plaintiff's claims against Fisher should be dismissed, without prejudice, for insufficient service of process. (Report 1–2.) In response, Plaintiff asserts four objections. (Objs.) I evaluate each objection in turn.

**1. Objection 1**

First, Plaintiff argues that the Report "gives no meaningful weight to the fact that [Singh] accepted a packet expressly naming Fisher after Singh said she could accept some service papers." (Objs. 2.) In fact, Plaintiff notes that "Singh did not refuse the envelope addressed to Fisher," "did not state that [she] was unable to accept Fisher's packet, did not say Fisher had to be served at another address, did not direct Plaintiff's process server to another recipient, and did not qualify the acceptance." (*Id.*)

As an initial matter, Plaintiff tries to relitigate the same arguments she raised during briefing before Magistrate Judge Moses, where she already had the opportunity to argue that Singh "held herself out as being able to accept service for Emily Fisher" and argued that this should hold weight. (Doc. 138 at 6.) I do not find clear error in Judge Moses' Report. *See Antrobus*, 2016 WL 5390120, at *1 (explaining that when a party is simply relitigating the original arguments, a district court judge reviewed the report and recommendation only for clear error).

Nonetheless, even under a *de novo* review standard, I find that this objection fails. As Magistrate Judge Moses correctly notes in her Report—regardless of Plaintiff's interpretive efforts to construe the conversation with Singh and Plaintiff's mother as one where Singh affirmatively represented that she had the authority to accept service for Fisher—"[u]nder both federal and state law, 'the designation of an individual to receive service of process must be clear and with the knowledge of the defendant sought to be served.'" *Azzarmi v. Key Food Stores Co-operative Inc.*, No. 20-CV-6835, 2022 WL 884973, at *4 (S.D.N.Y. Mar. 25, 2022) (quoting *Jackson v. Cty. of Nassau*, 339 F. Supp. 2d 473, 477 (E.D.N.Y. 2004)). Regardless of whether Singh held herself out as authorized to accept service for Fisher, "[t]here is no evidence in the

record showing that [Fisher] appointed [Singh] as her agent for the purposes of accepting service of process." *Azzarmi*, 2022 WL 884973, at *4; *see also Jackson*, 339 F. Supp. 2d at 478–79 (dismissing case against individual physician where the summons was delivered to Savinetti, "the individual who accepted service of process at the Nassau County Medical Center," but there was "no evidence that Dr. Sabir ever appointed Savinetti as his agent for service of process). Both Singh and Fisher attest that they never communicated with each other, nor was Singh authorized to accept service of process on Fisher's behalf. (Report 16 (citing Docs. 130-4, 130-5).) Thus, Plaintiff's first objection fails and is OVERRULED.

**2. Objections 2, 3 and 4**

Plaintiff's next three objections concern her argument that I should extend her time for service under Federal Rule of Civil Procedure Rule 4(m) rather than dismiss her claims against Fisher without prejudice. She contends that a district court has discretion to extend the time for service under Rule 4(m), and the factors favor an extension here, because: (1) dismissal without prejudice might time-bar some of her claims; (2) Fisher had notice of the action by September 11, 2025 and a short extension period would not prejudice her, because she had counsel "and an opportunity to preserve all jurisdictional, procedural, and merits defenses"; (3) Plaintiff was "diligent in attempting to locate and serve Fisher," because she "attempted service in New York and California, searched for a public New York address, sought leave to serve by email twice," and relied in good faith "on [Singh's] recorded acceptance of an envelope expressly directed to Fisher"; and (4) Fisher has offered no concrete prejudice from a short extension, since "defending a lawsuit after valid service is not legal prejudice." (Objs. 3–5.)

As an initial matter. I agree with Magistrate Judge Moses' assertion that an extension is not warranted because Plaintiff failed to establish good cause. "To establish good cause, a

plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *Fantozzi v. City of New York*, 343 F.R.D. 19, 26, 30 (S.D.N.Y. 2022), *aff'd*, No. 23-1111, 2024 WL 1597745 (2d Cir. Apr. 12, 2024) (summary order) (internal quotation marks omitted); *see also Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 401 (S.D.N.Y. 2020) ("Good cause to excuse a failure to effect service exists only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control.") (internal quotation marks omitted). The party advocating for good cause "bears a heavy burden of proof" requiring more than "some unanticipated difficulty." *Kogan*, 334 F.R.D. at 401 (S.D.N.Y. 2020) (quoting *Spinale v. United States*, No. 03-CV-1704, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *aff'd sub nom. Spinale v. Ball*, 352 F. App'x 599 (2d Cir. 2009) (summary order)). As Judge Moses correctly notes, "a mistaken belief that service was proper does not constitute 'good cause' under Rule 4(m)." *Beter v. Baughman*, No. 24-CV-0079, 2024 WL 2058489, at *3 (S.D.N.Y. Apr. 22, 2024) (quoting *Obot v. Citibank South Dakota, N.A.*, No. 04-CV-784A, 2006 WL 6905256, at *2 (W.D.N.Y. Oct. 17, 2006), *aff'd,* 347 F. App'x 658 (2d Cir. 2009) (summary order), *report and recommendation adopted*, 2024 WL 2058643 (S.D.N.Y. May 7, 2024)). Plaintiff does not point to circumstances beyond her control but rather points to her misunderstanding that serving Singh satisfied service for Fisher, which does not rise to the level of good cause. *Id.* Indeed, Plaintiff provides no evidence that she attempted to locate and re-serve Fisher once she was on notice of a possible service defect. She only characterizes her decision to not attempt further service as "reasonable" while the parties litigated the service issue. (Objs. 3–4.) However, these are not sufficient facts to meet the high burden of proof required for good cause.

Further, Plaintiff's argument that I should use my discretion to extend her time for

service under Rule 4(m), regardless of whether she meets the good cause standard, also fails. As Magistrate Judge Moses notes, I must consider several factors in making this determination: "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims; (3) whether defendant attempted to conceal the defect in service; (4) whether defendant would be prejudiced by extending the plaintiff's time for service"; and (5) other equitable factors. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) (collecting cases).

Under the first factor, while I note that certain claims, like her defamation claim, might be time-barred if I dismiss Plaintiff's claims against Fisher without prejudice, this consequence "does not always warrant a discretionary exception." *Harmon v. Bogart*, 788 F. App'x 808, 810 (2d Cir. 2019) (summary order); *see also, e.g.*, *Brunson-Bedi v. New York*, No. 15-CV-9790, 2018 WL 2084171, at *9 (S.D.N.Y. May 1, 2018) ("The statute of limitations on all of Plaintiff's claims have run . . . This factor weights in Plaintiff's favor, but is not dispositive."); *Knorr v. Coughlin*, 159 F.R.D. 5, 7 (N.D.N.Y. 1994) ("[T]he fact that dismissal will impact the statute of limitations does not compel the court to excuse the violation.").

"Instead, courts weighing this consideration have focused on whether the plaintiff had been aware of the deadline and the extent of the plaintiff's efforts to meet it." *Kogan*, 334 F.R.D. at 404 (collecting cases.) Here, "Plaintiff provides no explanation for her failure to make any efforts to effect service after [Fisher's motion or Magistrate Judge Moses' Report], which [suggested] that service had not yet been effected." *Beter*, 2024 WL 2058489, at *3. This is not a case where a "clerical or mailing error or similar technical lapses" hindered Plaintiff's service efforts. Plaintiff did not request an extension of the deadline, nor did she attempt to serve Fisher once she had notice of the possible service issues. *Kogan*, 334 F.R.D. at 404. Moreover, notably

here, Plaintiff alleges more than 20 claims against Fisher—many of which will not be time-barred. She still has the opportunity to pursue relief through several other claims. In any event, even if her defamation claim is time-barred, nothing in her Amended Complaint suggests that these allegations would survive a motion to dismiss in the future, as noted *supra* based on the Columbia Defendants' motion to dismiss. Accordingly, this factor does not dispositively weigh in Plaintiff's favor.

Moreover, while Fisher had notice of the lawsuit, which favors extending Plaintiff's time for service rather than dismissal, this still only provides limited support. "A defendant's notice of a lawsuit does not excuse a plaintiff's failure to serve." *Kogan*, 334 F.R.D. at 406 (citing *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order)). The other two discretionary factors also weigh against Plaintiff. Fisher made no effort to conceal the defect in service, and she promptly retained counsel and challenged the purported service. *See Goonewardena v. Spinelli*, No. 15-CV-5239, 2017 WL 4280549, at *8 (E.D.N.Y. Sept. 26, 2017) ("If a defendant does not attempt to conceal the defect in service, such inaction weighs against granting the plaintiff an extension to effect proper service."). In addition, Plaintiff's claim that there would be no prejudice to Fisher is flatly wrong. "Simply put, defendants have a right to enforcement of a statutory limitations period." *Kogan*, 334 F.R.D. at 403. "Although plaintiffs may suffer prejudice when a dismissal without prejudice time-bars an action, in these circumstances, excusing [Plaintiff's] service lapse would also visit prejudice on [Fisher], insofar as it would force [her] to defend against claims that, as a matter of law, are otherwise no longer viable." *Id.* (citing *Zapata v. City of New York*, 502 F.3d 192, 198–99 (2d Cir. 2007)). Indeed, as I have articulated, Plaintiff has many other claims of relief against Fisher that do not appear to be time-barred and are therefore still viable—however, extending the service deadline here

would force Fisher to defend against claims that are no longer viable, many of which are duplicative of Plaintiff's other claims in the Amended Complaint. Thus, Plaintiff's remaining objections also fail, and her objections are OVERRULED.

Accordingly, I hereby ADOPT Magistrate Judge Moses' Report in its entirety and deny Plaintiff's motion for default judgment, grant Fisher's cross-motion pursuant to Rule 55, so that Plaintiff's entry of default is vacated, and grant Fisher's cross-motion pursuant to Rule 12(b)(5), dismissing Plaintiff's claims against her without prejudice for insufficient service of process.

### D. *Motion for Temporary Restraining Order and Preliminary Injunction*

Finally, I address Plaintiff's temporary restraining order and preliminary injunction motion. In the Amended Complaint, Plaintiff requests a temporary restraining order and a preliminary injunction order directed toward Columbia University for the following relief:

(a) Reinstatement as a final semester student at CUSON;
(b) Allow Plaintiff to register for Summer II 2025 classes without penalty;
(c) Ability to complete the full program in August 2025 with degree conferral in October 2025;
(d) Remove the financial hold on Plaintiff's student account;
(e) To make sure Plaintiff maintains the HRSA Nurse Corp Scholarship;
(f) Reinstate Plaintiff's Fall 2025 admission in the DNP Midwifery program;
(g) Reinstate Plaintiff's disability reasonable accommodations and allow for the instatement of the other requested disability reasonable accommodations.
(h) Restore Plaintiff's "Excused" grade for the Integration course;
(i) Remove the "Low Pass" grade and the academic probation;
(j) To grant Plaintiff government oversight and protection;
(k) To reimburse Plaintiff for the Fall 2024 semester per HRSA guidelines;

(Am. Compl. 71–72.) In her request to expedite the motion, Plaintiff further requests an order against Columbia University to "immediately remove all financial and academic holds preventing Plaintiff's enrollment for the January 2026 semester" and an order requesting that "Columbia University, its employees, agents, and students to cease all contact with, harassment of, defamation of, and retaliation against Plaintiff." (Doc. 146 at

6.)

Clearly, the myriad of injunctive relief claims that Plaintiff requests are all contingent on her reinstatement as a student at CUSON. None of the other requested relief—allowing course registration, removing the financial hold, or changing her grades—would matter if she is not reinstated as a CUSON student. Reinstatement as a CUSON student is crucial because "[n]ursing school credits are not transferable." (Am. Compl. ¶ 6.) In short, Plaintiff's motion for injunctive relief rises and falls based on whether she can be reinstated as a CUSON student.

Plaintiff fails to demonstrate irreparable harm to warrant reinstatement as a student at CUSON.[16] "Numerous courts in this Circuit have concluded that a dismissed student will not suffer irreparable harm in the absence of reinstatement." *Madej v. Yale Univ.*, No. 20-CV-133, 2020 WL 1614230, at *6 (D. Conn. Mar. 31, 2020) (collecting cases); *see also Phillips v. Marsh*, 687 F.2d 620, 622 (2d Cir. 1982) (finding no irreparable harm for a delay in graduation because it is "compensable by monetary damages"). Plaintiff's contention that "failure to be enrolled by January 2026 will result in permanent termination of her federal scholarship" does not change this outcome. (Doc. 146 at 1.) Because her injuries can be compensated by monetary damages—for example, Plaintiff's claimed loss of her HRSA Scholarship, (PI Mem. 22; Doc.

[16] Plaintiff also claims, without citing any binding case law, that irreparable harm is presumed in cases concerning civil rights and education access. (PI Mem. 21.) The cases Plaintiff cites are inapposite. First, *Elron v. Burns*, 427 U.S. 347 (1976), concerned claims under the First Amendment and is therefore inapplicable here. Second, Plaintiff misconstrues *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) as establishing such a presumption. There, the Supreme Court analyzed plaintiff's standing, and stated: "As we have held, one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff." *Id.* at 719 (citations omitted). Finally, Plaintiff quotes an out-of-circuit case to state that "[t]he emotional and psychological toll of being unable to pursue one's profession is a form of irreparable injury." (PI Mem. 21 (quoting *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 709 (9th Cir. 1988).) However, I am unable to find where the court in *Chalk* made that statement, or made a holding to that effect. Not only did *Chalk* not create a presumption of irreparable harm, but *Chalk* simply held that the plaintiff's employment-based claims were "emotional and psychological" that "cannot be adequately compensated for by a monetary award after trial." *Id.* at 709–10. Plaintiff's claims are not based on any alleged employment at Columbia University, but instead relate to her status as a graduate student.

146 at 1), or her possible lack of access to federal student loans if she is not enrolled, (Doc. 146 at 2)—Plaintiff fails to demonstrate irreparable harm.

Further, Coney's administrative withdrawal is the consequence of her own inaction, further militating against a finding of irreparable harm. Coney concedes that Columbia University would have allowed her to register for her courses if she either "(1) paid $10,000 immediately and entered into a monthly payment plan, or (2) paid over $28,000 in full." (Am. Compl. ¶ 160.) Plaintiff could have done so, and then sought monetary damages based on her claims. She also could have filed a leave of absence and thereby preserved her status as a student while she resolved her financial hold. (*Id.* ¶ 221.) Coney did neither, and instead chose to seek the extraordinary relief of a preliminary injunction. I agree with Columbia University's claim that, "[h]er dismissal from Columbia resulted from her own failure to preserve the status quo, either by requesting a leave of absence to resolve her financial hold or by paying the overdue balance, which remained outstanding for over four months." (Doc. 107 at 3.) Plaintiff's own actions in this matter weigh against a finding of irreparable harm. *See Howe v. Burwell*, No. 15-CV-6, 2015 WL 4479757, at *6 (D. Vt. July 21, 2015) ("Plaintiff must also establish that [her] alleged harm is not self-inflicted."); 11A Charles A. Wright, Federal Practice and Procedure § 2948.1 (3d ed. 2025) "([A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted.") This assessment does not change simply because the University has stated that "they will report [Plaintiff] to collection agencies." (Doc. 146 at 3.) Indeed, as noted, Plaintiff's inaction and nonpayment remain the source of these communications.

Plaintiff's claims of damages to her reputation, emotions, and career, (PI Mem. 23), are also speculative and do not demonstrate irreparable harm. Coney does not claim to have any job

offer or a start date. *See Doe v. Middlebury Coll.*, No. 1:15-cv-192-JGM, 2015 WL 5488109, at *3 (D. Vt. Sept. 16, 2015) (finding irreparable harm because plaintiff "has a job offer, to begin in July 2016, contingent on the successful completion of his degree"). Nor does she claim that she will be forced to repeat any courses she has already taken. *See Bhandari v. Trs. of Columbia Univ.*, No. 00-CV-1735, 2000 WL 310344, at *5 (S.D.N.Y. Mar. 27, 2000) (finding irreparable harm where plaintiff would be required to repeat courses he was taking because it "would forever deny him the benefit of the work he has already performed this semester"). Nor does she claim that she needs to become a nurse immediately. *Biediger v. Quinnipiac Univ.*, 616 F. Supp. 2d 277, 291 (D. Conn. 2009) (finding irreparable harm where college volleyball team was disbanded because "given the fleeting nature of college athletics, plaintiffs will suffer irreparable harm by losing the opportunity to participate in their sport of choice on a continuous and uninterrupted basis"). In fact, Plaintiff does not forever lose eligibility to become a nurse. Rather, Plaintiff's primary grievance is that her education has been interrupted. However, such a delay in education, although potentially costly to Plaintiff, "can be remedied through monetary compensation." *Montague v. Yale Univ.*, No. 16-CV-885, 2017 WL 4942772, at *4 (D. Conn. Mar. 8, 2017) (citing *Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 714 (S.D. Ohio 2015). As the University points out, Plaintiff need only resolve the financial hold on her account and she can be reinstated as a CUSON student. Further, Plaintiff's attempt to allege irreparable reputational harm through her allegations about online harassment, (*see* Doc. 146 at 3–4), are also unavailing, because reinstatement as a nursing student would not mitigate online posts about her reputation. In sum, none of Plaintiff's alleged harms can be considered irreparable.[17]

[17] In her amended reply brief, Plaintiff asserts, for the first time, a litany of supposed irreparable harm she claims she will suffer. (Doc. 63 (listing, among other things, back-dated withdrawal date, "loss of housing," "loss of life," "creditworthiness," "loss of time," "lack of safety and physical endangerment," "ongoing academic harm,"

Because Plaintiff fails to establish irreparable harm, which "must be satisfied before the other requirements for an injunction can be considered," *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 106, I need not consider the other preliminary injunction requirements and DENY Plaintiff's motion.

**E. *Leave to Amend***

Generally, leave to amend should be "freely give[n]," Fed. R. Civ. P. 15(a), and a pro se litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984). As such, complaints brought by pro se litigants are often dismissed without prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that leave to amend should be given unless there is no indication that the pro se plaintiff will be able to assert a valid claim); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (per curiam) (stating that pro se complaints are generally "not dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" (internal quotation marks omitted)). "Still, even *pro se* litigants may be denied leave to amend when an amendment would be futile." *Cameron v. Garland*, No. 25-CV-6036, 2026 WL 1707077, at *5 (S.D.N.Y. June 12, 2026) (internal quotation marks omitted).

While I have dismissed most of Plaintiff's claims with prejudice because I found that amendment was futile, I find it is in the interest of justice to grant Plaintiff leave to amend the claims I dismissed without prejudice: (1) her Title VI claim against NYPH; (2) her Section 1986

---

"academic delay," "scholarship, licensing, and reputation harms," and "loss of health insurance") at 9–24.) These arguments are therefore waived. *See Cottam v. Glob. Emerging Cap. Grp., LLC*, No. 16-CV-4584, 2020 WL 1528526, at *14 (S.D.N.Y. Mar. 30, 2020) ("[A]rguments raised for the first time in a reply brief are waived."); *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an . . . opening brief are waived.").

and civil RICO claim against both the NYPH Defendants and the Columbia Defendants; (3) her state and city law claims against the NYPH Defendants; (4) her defamation claim against the Columbia Defendants; and (5) her claims against Defendant Fisher. Plaintiff is warned that, having received notice of the deficiencies in her pleadings, she is unlikely to be granted another opportunity to amend. *See Douglas v. Abrams Child. Books*, No. 13-CV-2613, 2014 WL 12909009, at *10 (S.D.N.Y. Sept. 26, 2014) ("Plaintiff's failure to fix the defects, after being provided with notice of them, is alone sufficient ground to deny leave to amend *sua sponte*." (collecting cases)).

## V. <u>**Conclusion**</u>

For the reasons articulated, the NYPH Defendants' motion to dismiss is GRANTED, with some federal and state claims dismissed without prejudice and with leave to amend; the Columbia Defendants' partial motion to dismiss is GRANTED, with some federal and state claims dismissed without prejudice and with leave to leave.

Magistrate Judge Moses' Report & Recommendation is ADOPTED in full, and Plaintiff's objections are OVERRULED. Therefore, Plaintiff's motion for a default judgment against Fisher is DENIED and Fisher's cross-motion to vacate entry of default and motion to dismiss pursuant to Rule 12(b)(5) is GRANTED, with Plaintiff's claims against her dismissed without prejudice and with leave to amend.

Plaintiff's temporary restraining order and preliminary injunction motion is also DENIED.

If Plaintiff wishes to amend certain claims, she is directed to file a Second Amended Complaint within forty-five (45) days of the filing of this Opinion & Order.

The Clerk of the Court is respectfully directed to terminate the motions at Documents 112, 114, 121, 123, 130, and 146 and vacate the Clerk's Certificate of Default as to Fisher at Document 119.

SO ORDERED.

Dated: September 30, 2026
New York, New York

Vernon S. Broderick
United States District Judge